# United States District Court

*for the*

## Eastern District of New York

Case No. 25-cv-00606-NCM

In re: Home Building Corporation,

*Debtor.*

HOME BUILDING CORPORATION,

*Plaintiff-Appellant,*

– against –

PITSA KADIANAKIS,

*Defendant-Appellee.*

*On Appeal from the Final Order of the United States Bankruptcy Court for the Eastern District of New York, Honorable Robert E. Grossman, in Bankruptcy Case No. 8-24-72229-(REG)*

## BRIEF FOR PLAINTIFF-APPELLANT

LAW OFFICE OF RONALD D. WEISS, P.C.
*Attorneys for Plaintiff-Appellant*
445 Broadhollow Road, Suite CL-10
Melville, New York 11747
Tel.: (631) 223-4810
Fax: (631) 271-3784
weiss@ny-bankruptcy.com

CP COUNSEL PRESS (800) 4-APPEAL • (369766)

# RULE 8012 DISCLOSURE STATEMENT

(a) Disclosure by a Nongovernmental Corporation. Any nongovernmental corporation that is a party to a district-court or BAP proceeding or that seeks to intervene must file a statement that:

(1) identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock; or

(2) states that there is no such corporation.

There is no such corporation.

(b) Disclosure About the Debtor. The debtor, the trustee, or, if neither is a party, the appellant must file a statement that:

(1) identifies each debtor not named in the caption; and

(2) for each debtor that is a corporation, discloses the information required by (a).

No additional debtors.

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... iii

STATEMENT OF APPELLATE JURISDICTION ..... 1

STATEMENT OF THE ISSUES ..... 2

STATEMENT OF FACTS ..... 4

a) The Case Was Not a "Two-Party Dispute" ..... 6

b) Reorganization Was Feasible ..... 6

c) The Chapter 11 Case was Not Filed Only For Automatic Stay ..... 7

d) The Case was Not a "Bad Faith" Filing ..... 7

SUMMARY OF ARGUMENT ..... 11

ARGUMENT ..... 12

I. THE BANKRUPTCY COURT ERRED IN REVIEWING THE FEE APPLICATION BASED ON A "BAD FAITH" ANALYSIS, WHEN THE ISSUE OF "BAD FAITH" HAD ALREADY BEEN APPEALED AND WAS DISPUTED IN THE DEBTOR'S FIRST APPEAL, WHICH IS STILL IN REVIEW BY THIS DISTRICT COURT ..... 12

A. The "Griggs Rule" Prevents the Bankruptcy Court from Using "Bad Faith" as a Justification for Completely Denying Attorney's Fees to Debtor-Appellant's Counsel ..... 12

B. In the First Appeal the Decision to Dismiss the Chapter 11 Case Based on "Bad Faith" Had Been Procedurally Disputed ..... 15

C. In the First Appeal the Decision to Dismiss the Chapter 11 Case Based on "Bad Faith" Had Been Substantively Disputed ..... 20

II. THE BANKRUPTCY COURT ERRED IN NOT ENGAGING IN THE STATUTORILY PROSCRIBED REVIEW OF THE FEE APPLICATION BASED ON TIME, EFFORT AND BENEFIT TO THE BANKRUPTCY ESTATE AND AS A NECESSARY AND FEASIBLE CHAPTER 11 CASE FILING ....................22

A. The Standards for Awarding Compensation to Counsel for Chapter 11 Debtor in Possession....................22

B. The Bankruptcy Court Exceeded its Allowable Discretion ....................32

CONCLUSION ....................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Baker Botts L.L.P. v. ASARCO LLC*,
135 S. Ct. 2158, 192 L.Ed 2d 208, 576 U.S. (2015) ....................31

*Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner)*,
783 F.3d 266 (5th Cir. 2015)....................28

*Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*,
128 F.3d 504 (C.A. 7 1997) ....................14

*Callaghan v. Reconstruction Finance Corp.*,
297 U.S. 464, 56 S. Ct. 519, 80 L. Ed. 804 (1936) ....................26

*Cohoes Indus. Terminal, Inc.*,
931 F.2d 222 (2d Cir. 1991)....................20

*Coinbase, Inc. v. Bielski*,
599 U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023) .................... 14, 15

*Gravel and Shea v. Vt. National Bank*,
162 B.R. 961 (Vt. 1993) ....................2

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56, 103 S. Ct. 400 .................... 15, 36

*Hovey v. McDonald*,
109 U.S. 150, 3 S. Ct. 136, 27 L. Ed. 888 (1883) ....................14

*Howard v. High River Ltd. P'ship*,
369 B.R. 111 (S.D.N.Y.2007)....................34

*In re Ames Department Stores*,
76 F.3d 66 (2d Cir. February 6, 1996) .................... 25, 27, 28, 30

*In re Arlan's Dep't Stores, Inc.*,
615 F.2d 925 (2d Cir. 1979).................... 33-34

*In re Bayshore Wire Prods. Corp.*,
209 F.3d ....................33

*In re Cadwell's Corners P'ship*,
174 B.R. 744 (Bankr. N.D. Ill. 1994) ....................21

*In re Cassani*,
214 B.R. 459 (Vt. 1997) ......................................................................................1

*In re Emanuel*,
460 F. App'x 48 (2d Cir. 2012)..........................................................................33

*In re JLM. Inc.*,
210 B.R. 19 (2d Cir. 1997) ................................................................................33

*In re Lake Mich. Beach Pottawattamie Resort LLC*,
547 B.R. 899 (Bankr. N.D. Ill. 2016) ...............................................................21

*In re Lupton Consulting LLC*,
638 B.R. 897 (Bankr. E.D. Wis. 2022)..............................................................32

*In re Manville Forest Products Corp*.,
896 F.2d 1384 (2d Cir. 1990)...........................................................................1, 2

*In re Melp*,
179 B.R. ...........................................................................................................29

*In re Pilgrim's Pride Corp*.,
690 F.3d 650 (5th Cir. 2012)........................................................................ 30-31

*In re Smith*,
317 F.3d 918(9th Cir. 2002)........................................................................ 29, 30

*In re Spanjer Bros, Inc.*,
203 B.R. 85 (Bankr. N.D. Ill. 1996) .................................................................32

*In re Strand*,
375 F.3d 854 (9th Cir. 2004)..............................................................................30

*In re Taxman Clothing Co.*,
49 F.3d ..............................................................................................................30

*In re Top Grade Sausage, Inc.*,
227 F.3d 123 (3d Cir. 2000),
*abrogated on other grounds by Lamie*, 540 U.S. 526, 124 S. Ct. 1023 ........ 28, 30

In re Tribecca Market, LLC,
516 B.R. (2014) ..................................................................................................34

*In re Xebec,*
147 B.R. 518 (9th Cir.1992),
*abrogated on other grounds by Lamie*, 540 U.S. 526, 124 S. Ct. 1023 ...............29

*In the Matter of UNR Indus., Inc.*,
986 F.2d 207 (7th Cir. 1993)........................................................................ 26, 27

*Johnson v. Univ. of Rochester Med. Ctr.*,
642 F.3d 121 (2d Cir. 2011)............................................................................34

*Johnson*,
488 F.2d ....................................................................................................... 30, 31

*Matter of Taxman Clothing Co.*,
49 F.3d 310 (7th Cir. 1995).......................................................................... 27, 30

*Schwartz v. Geltzer (In Re Smith)*,
507 F.3d 64 (2d Cir. 2007)..............................................................................34

*United States v. U.S. Gypsum Co.*,
333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948) ..........................................25

**Statutes & Other Authorities:**

11 U.S.C. § 330 ........................................................................................ *passim*

11 U.S.C. § 330(a)(1).........................................................................................31

11 U.S.C. § 330(a)(1)(A) ...................................................................................22

11 U.S.C. § 330(a)(1)(B).....................................................................................22

11 U.S.C. § 330(a)(3).........................................................................................30

11 U.S.C. § 330(a)(3)(C)............................................................................... 26, 30

11 U.S.C. § 330(a)(4)(A) ............................................................................... 28, 30

11 U.S.C. § 1111(a)........................................................................................6, 16

11 U.S.C. § 1112 ................................................................... 10, 15, 20, 35

11 U.S.C. § 1112(b)...........................................................................................7, 8

11 U.S.C. § 1112(b)(1) ................................................................................ 17, 36

11 U.S.C. § 1112(b)(2) ................................................................................ 19, 20

11 U.S.C. § 1112(b)(3) ................................................................................ 18, 19

28 U.S.C. § 157....................................................................................................1

28 U.S.C. § 157(b) ..............................................................................................1

28 U.S.C. § 158(a)(1).......................................................................................1
28 U.S.C. § 1334 ...............................................................................................1
Fed. R. Bankr. P. 8013 ..................................................................................1, 25

## STATEMENT OF APPELLATE JURISDICTION

This is an appeal by Home Building Corporation (the "Appellant-Debtor" and "Debtor"), of the Bankruptcy Judge Robert E. Grossman's decision, dated January 17, 2025 [(Bankr. E.D.N.Y.) [ECF #59], and Order dated January 24, 2025 [(Bankr. E.D.N.Y.) [ECF#60], which denied the fee application of Ronald D. Weiss, P.C. (the Debtor's and Appellant-Debtor's "Counsel") in the Chapter 11 Bankruptcy case of the Debtor-Appellant, Home Building Corporation, which ordered the disgorgement of all attorney fees paid to Debtor 's Counsel in the amount of $30,000.00, while allowing the expenses in the case in the amount of $2,400.00, (the "Disgorgement Decision" and "Disgorgement Order").

The Bankruptcy Court had jurisdiction over this matter under 28 U.S.C.§157 and 1334 and the matter is a core proceeding under 28 U.S.C. §157(b). The Notice of Appeal was filed and served on January 31, 2025.

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §158(a)(1) , which gives the Federal District Courts jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in "core proceedings" (cases and proceedings involving purely bankruptcy matters). A bankruptcy judge's findings of fact may not be set aside unless clearly erroneous. F.R.Bankr.P. 8013. *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1388 (2d Cir. 1990); *In re Cassani,* 214 B.R. 459, 462 (Vt. 1997). Questions of law are

reviewed *de novo*. *Gravel and Shea v. Vt. National Bank,* 162 B.R. 961, 964 (Vt. 1993) (citing *In re Manville Forest,* 896 F.2d at 1388 ).

**STATEMENT OF THE ISSUES**

a) Whether the case should have been dismissed as a "bad faith filing", when it was clear that there was significant equity in the Debtor's commercial property and there were bona fide efforts by the Debtor to obtain financing and to sell the property, as realized by the retention by the Debtor in the bankruptcy case, of a broker?

*NO; the case was not a "bad faith filing" as characterized by the Court. It was filed with a good faith intent and with an ability to reorganize that was clear due to the significant equity in the property and the Debtor's efforts to sell and/or refinance.*

b) Whether the case should have been dismissed as a "bad faith filing", where the Debtor sought to adjust the amount owed the lender given several large post-judgment payments by the Debtor that exceeded $315,000.00, in an attempt to resolve its foreclosure, that were accepted by the lender.

*NO; the case was not a "bad faith filing" as characterized by the Court. It was filed with a good faith intent and with an ability to reorganize, that was clear given the pre-petition attempt by the debtor to reinstate or drastically reduce their loan arrears, as was allowed by the lender.*

c) Whether the case should have been dismissed as a “bad faith filing”, where the lender was protected by a huge equity cushion in the property and by the Debtor’s post-petition mortgage payments and the Debtor's commercial tenant was paying timely rent and the Debtor meticulously met all it’s Chapter 11 administrative requirements.

*NO; the case was not a “bad faith filing” as characterized by the Court. It was filed with a good faith intent and with an ability to reorganize that was clear by the huge equity cushion in the property and by the Debtor’s post-petition mortgage payments and the fact that Debtor's commercial tenant was paying timely rent and the Debtor meticulously met all its Chapter 11 administrative requirements.*

d) Whether Debtor’s counsel deserved to have all of its fees disgorged, and whether the debtor deserved to be characterized negatively by the Court, where Debtor and it’s Counsel had proceeded in good faith in this case, and Debtor’s counsel had provided the Court with its application with time and expenses, that showed significant time and a benefit to the estate?

*NO; Debtors Counsel did not deserve to have all their fees disgorged when they in good faith filed and worked on the Chapter 11 case, and submitted a timely fee application, that showed significant time spent by counsel and benefit to the estate.*

e) Whether Debtor's counsel deserved to have all of its fees disgorged; and whether the Debtor deserved to have its reorganization efforts characterized negatively by the Court, where the Court's premature dismissal of the case, prior to the Debtor's ability to sell or refinance the property, hindered and frustrated the Debtor's reorganization?

NO; *Debtors Counsel did not deserve to have all their fees disgorged, when they in good faith filed and worked the Chapter 11 case; and the Debtor did not deserve to have its reorganization efforts characterized negatively by the Court, where the Court's premature dismissal of the case prior to the Debtor's ability to sell or refinance the property, hindered and frustrated the Debtor's reorganization efforts.*

## STATEMENT OF FACTS

Bankruptcy Judge Robert E. Grossman, in a written decision, dated January 17, 2025 [(Bankr. E.D.N.Y.) [ECF #59], and Order dated January 24, 2025 [(Bankr. E.D.N.Y.) [ECF#60], denied the fee application of Ronald D. Weiss, P.C. ("Counsel") of the Chapter 11 Debtor, Home Building Corporation (the "Debtor", "Appellant", and "Debtor-Appellant") and ordered the disgorgement of all attorney fees paid to Debtor 's Counsel in the amount of $30,000, while allowing the expenses in the case in the amount of $2,400 (the "Disgorgement Decision" and "Disgorgement Order"). The Disgorgement Decision and Order have

been appealed by the Debtor and Debtor's Counsel by Notice of Appeal [(Bankr. E.D.N.Y.) [ECF #63], dated January 31, 2025 (the "Current Appeal").

Earlier at a hearing held on October 21, 2024, Bankruptcy Judge Robert E. Grossman had orally dismissed the Debtor's Chapter 11 case, and in an Order dated October 24, 2024 instructed the United States Trustee's Office (the "U.S. Trustee") to upload a dismissal order upon the filing by the Debtor of operating reports and quarterly fees due at the time (the "Dismissal Hearing Decision" and the "Preliminary Dismissal Order"). The Debtor had fully complied with Judge Grossman's directive in the Preliminary Dismissal Order, but the U.S. Trustee, without any explanation, did not follow the Bankruptcy Court's instructions, and failed to upload the dismissal order; so the Chapter 11 case has been preliminarily dismissed, but mechanically, the actual order dismissing the Chapter 11 case was inexplicably never uploaded. This Dismissal Hearing Decision and Preliminary Dismissal Order were the subject of the Debtor-Appellant's earlier, October 31, 2024, Appeal (the "First Appeal") [(Bankr. E.D.N.Y.) [ECF #37]; District Court Case, Case No. 2:24-cv-07643-NCM]. The basis of the First Appeal was that the Bankruptcy Court had erred when it dismissed the Chapter 11 case, because the case was not a "bad faith" bankruptcy filing as alleged by the Bankruptcy Court.

The Debtor-Appellant's First Appeal sought to review the Dismissal Hearing Decision and Preliminary Dismissal Order, that substantively dismissed the

case after the Chapter 11 case, which was filed on June 10, 2024, after the case was only 4-5 months old, based on alleged "bad faith" by showing that the reasoning of the Court was in error as follows:

***a) The Case Was Not a "Two-Party Dispute"***

The Court regarded the case was to be a mere two-party dispute between a lender and homeowner that belonged in state court; BUT: the debtor showed that it had several unsecured that were added to the schedules and that the Court, unfairly disregarded such undisputed, unsecured creditors in reasoning that ignored Section 1111(a) of the Bankruptcy Code, which states: "A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated.

***b) Reorganization Was Feasible***

The Court incorrectly concluded that the Debtor-Appellant had no hope of reorganizing; BUT: the Debtor's vast equity in the property allowed a 100% payout plan, upon refinancing or a sale of the property. The Debtor's commercial property located at 350 Sunrise Highway, West Babylon, NY 11704 (the "Property") was valued in an appraisal at $1,075,000.00., whereas the secured creditor claim of Pitsa Kadianakis is an amount of $625,952.85 (which the Debtor intends to dispute), resulting in at least $449,047.15 in equity. The unique tenant at the Property, a yoga

studio, had a following, and significant economic activity and paid current rent over $10,000. per month. All of which indicated that a reorganization was very feasible and creditors would have been paid in full.

***c) The Chapter 11 Case was Not Filed Only For Automatic Stay***

The Bankruptcy Court again incorrectly assumed that the Chapter 11 case was filed merely for an automatic stay in order to delay its secured creditor. However, while a stay was essential to prevent an imminent loss of a large amount of equity at an impending foreclosure auction, there was every indication that was not the sole reason to file the case. The Debtor-Appellant was moving forward to sell and/or refinance the Property in order to pay in full all of its creditors, in that the Debtor applied to retain a broker to sell the Property on September 13, 2024, which the Court granted on October 11, 2024. The Preliminary Dismissal Order on October 24, 2024, 13 days later, did not give the Debtor any opportunity to complete such sale and/or refinancing efforts.

***d) The Case was Not a "Bad Faith" Filing***

The Bankruptcy Court decided that the Case needed to be dismissed as a "bad faith" case. BUT: As elaborated in greater detail below, the Court failed to engage in appropriate notice and hearing required under Section 1112(b) of the Bankruptcy Code and to inquire and review evidence as to whether the debtor could reorganize.

The Debtor-Appellant filed opposition, dated October 11, 2024, to the United States Trustee's Motion to Dismiss or Convert the Chapter 11 case filed on August 11, 2024 [(Bankr. E.D.N.Y.) [ECF #28], which entered the alleged grounds for the dismissal based on "bad faith". The Debtor- Appellant had showed in the opposition that the case was not a two-party dispute; and that the Debtor's large amount of equity in the property, made the debtor's reorganization very likely and that the Debtor in good faith sought to sell or refinance. The Court granted the US Trustee's Motion to Dismiss the Chapter 11 case at the Dismissal Hearing Decision on October 21, 2024, without an evidentiary hearing and without proper notice as required under 11 U.S.C §1112(b) of the Bankruptcy Code.

More recently, the U.S. Trustee had made a different motion to dismiss, to dismiss the First Appeal, dated October 31, 2024, as interlocutory [District Court Case, Dkt. No. 11]. The Debtor-Appellant had opposed dismissal of the First Appeal, based on the fact that Bankruptcy Judge Grossman himself in the recent Disgorgement Decision, impliedly acknowledged that the Preliminary Dismissal Order, which made final dismissal conditioned on the Debtor filing operating reports and paying quarterly fees due at the time, was supposed to result in the United States Trustee taking immediate steps to dismiss the Chapter 11 case [District Court Case, Dkt. No. 16]. The United States Trustee's Office had inexplicably failed to follow the dictates of the Preliminary Dismissal Order. In

opposing dismissal of the First Appeal, the Debtor-Appellant has argued that even if the Dismissal Hearing Decision and Preliminary Dismissal Order were interlocutory, their effects were final, to the extent that the Chapter 11 case could no longer proceed. Moreover, the Debtor-Appellant also argued that the Appellee, the U.S. Trustee, by its own inaction in failing to upload the final dismissal order, as was required in the Preliminary Dismissal Order, prevented the final dismissal order, and was conflicted in opposing and seeking to dismiss the First Appeal.

The Debtor’s Fee Application was filed on November 12, 2024, before the December 2, 2024 hearing on such fee application. Prior to the hearing, the U.S. Trustee on November 26, 2024, filed a late objection to such fee application, where the U.S. Trustee objected to certain elements of the fee application, but did not urge the Court for total disgorgement. In the fee application Debtor's counsel applied for attorney fees in the amount of fees in the amount of $24,979.00 and expenses in the amount of $2,500.00 [(Bankr. E.D.N.Y.) [ECF #43] . The application showed many appearances, including appearances for an IDI hearing, a creditors meeting, three status conferences, two hearing on motions/applications, and time spent meeting administrative requirements like schedules, operating reports, a bar date order, two retention applications and a motion for a comfort order. This time spent by the Debtor-Appellants counsel and benefit conferred by the case and counsel’s work, were qualifiedly acknowledged by the Bankruptcy Court. The Court impliedly

acknowledged that the automatic stay and preventing the imminent foreclosure sale, and loss of equity, benefited the estate and that the many administrative tasks engaged in by Debtor's counsel, likewise, were beneficial. Yet the Court faulted the Debtor and its counsel in not having an intention or ability to reorganize. But the Court made such unfounded and unfair assumptions without adequate notice or evidentiary hearings as required under Sections 1112 and 330 of the Bankruptcy Code, and in an unwarranted, conclusory manner decided that the case was filed merely to obtain an automatic stay. However, if the Court would have properly examined the facts of the case, in an evidentiary hearting that was required under Sections 1112 and 330 of the Bankruptcy Code, it would have been clear to the Court that the facts of the case show the exact opposite: the Debtor and its counsel had every intention to reorganize and that the vast equity in the Property made a sale or refinancing of the Property very likely, and hence a reorganization, was not only feasible, but very probable.

## SUMMARY OF ARGUMENT

The Current Appeal of the Disgorgement Decision and Order, overlaps the First Appeal of the Dismissal Hearing Decision and Preliminary Dismissal Order in that the Bankruptcy Court used the same reasoning, based on "bad faith" to not only dismiss the Chapter 11 case, but also to completely deny any attorney fees for the Debtor-Appellant's Counsel. In the Current Appeal, we had appealed the use of the same "bad faith" doctrine to deny the Debtor's Counsel any attorney fees in the Chapter 11 case, since such reasoning was already being appealed, as a basis to dismiss the case, and therefore based on the United States Supreme Court "Grigg's Rule", jurisdiction over the issue was with the District Court, as an appellate court, and the Bankruptcy Court was stayed from revisiting and re-using such issue as a basis to deny the fee application. Instead, we argued that the Court needed under Section 330 of the Bankruptcy Code to engage in proper notice and a hearing as to the attorney fees, and analyze the time and effort expended, and if it reasonably, was expected prospectively to benefit the debtor's estate. The main obstacle in reorganizing the case in Chapter 11, was not any issue raised by the creditors or the U.S. Trustee, or any financial, administrative or feasibility issue, but the Court's own errors in assessing the facts and law that applied to the case, which caused the Court to order the premature dismissal of the Chapter 11 case.

# ARGUMENT

## I. THE BANKRUPTCY COURT ERRED IN REVIEWING THE FEE APPLICATION BASED ON A "BAD FAITH" ANALYSIS, WHEN THE ISSUE OF "BAD FAITH" HAD ALREADY BEEN APPEALED AND WAS DISPUTED IN THE DEBTOR'S FIRST APPEAL, WHICH IS STILL IN REVIEW BY THIS DISTRICT COURT.

### A. The "Griggs Rule" Prevents the Bankruptcy Court from Using "Bad Faith" as a Justification for Completely Denying Attorney's Fees to Debtor-Appellant's Counsel.

The Bankruptcy Court's basis for denying the attorney fees of Appellant-Debtor's counsel, as communicated in the Disgorgement Decision, dated January 17, 2025 and Order, dated January 24, 2025 was the same basis used for dismissing the Chapter 11 case. In essence, the Bankruptcy Court in the Disgorgement Decision and Order alluded to the Chapter 11 case being a "bad faith" filing by suggesting that it was filed solely for the purpose of obtaining an automatic stay of an imminent foreclosure sale. As per the explanation in the Disgorgement Decision, "the Weiss Firm's services… were not reasonably likely to benefit the Debtor's estate" in what the Court found the case to be a single asset real estate case. However, the Bankruptcy Court, should not have relied on "bad faith" analysis in its review of the fee application, because the Court's finding of "bad faith" had already been appealed to this U.S. District Court in the First Appeal on October 31, 2024. Here, the Bankruptcy Court's previous finding of "bad faith",

which was already being appealed, was used again by the Bankruptcy Court to justify a complete denial of attorney fees for the Debtor-Appellant's counsel. However, since the issue of whether the Chapter 11 case should have been preliminary dismissed after 4-5 months on the basis of being a "bad faith" single asset real estate case, was the essence of the Debtor's First Appeal, initiated on October 31, 2024, and where Debtor-Appellant's appeal memorandum of law for the First Appeal was filed on December 2, 2024, the Bankruptcy Court should have deferred to the District Court before deciding and ordering the disgorgement of attorney's fees, on the basis of the same "bad faith" analysis. Given the need to give difference to the District Court, as an appellate court, the Bankruptcy Court needed to allow the issue to be resolved in the pending First Appeal, regarding whether the case was a "bad faith" filing. Instead, despite the appeal of the "bad faith" issue, the Bankruptcy Court, in the January 17, 2025, Disgorgement Decision, on the Debtor's attorneys fee application, again used the same "bad faith" analysis to suggest that because the Chapter 11 case was filed in "bad faith", all fees paid to the Debtors Counsel should be denied.

The United States Supreme Court has made clear, that when lower courts are presented with an issue, that is similar to an issue that has already been appealed, that the lower courts should stay their proceedings on such issue.. "An appeal including an interlocutory appeal, 'divests the district court over those

aspects of the case involved in the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74L.Ed.2d 225). In *Coinbase, Inc. v. Bielski*, the U.S. Supreme Court held that the district court must stay its proceedings while an interlocutory appeal on the issue of arbitrability is ongoing. "Continuation of proceedings in the district court 'largely defeats the point of the appeal.'" *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023) (Quoting *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (C.A. 7 1997). "The Griggs principle reflects a longstanding tenant of American Procedure." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023)(Referencing *Hovey v. McDonald*, 109 U.S. 150, 157, 3 S.Ct. 136, 27 L.Ed. 888 (1883).

Our case is analogous, in that the Bankruptcy Court needed to stay further decisions based on the issue of "bad faith", while the issue of "bad faith" was being appealed to the District Court. In *Coinbase, Inc. v. Bielski*, Coinbase moved to stay District Court proceedings while the issue of whether arbitration could be compelled, was on appeal to the Circuit Court. The automatic U.S. Supreme Court stated that "If the District Court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration… would be irretrievably lost…" *Coinbase, Inc. v. Bielski*, 599

U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023). The Supreme Court's reasoning in *Coinbase, Inc. v. Bielski* and in *Griggs v. Provident Consumer Discount Co.*, is applicable to our case. Here, in our case, the Bankruptcy Court's disgorgement of attorney fees, in the January 24, 2025 Disgorgement Order, based on a "bad faith" analysis, prematurely deprived the Debtor-Appellant's counsel of the benefits of being compensated for legal work and time that has already been incurred in the case, when such decision may be overturned by the pending appeal before the District Court.

Because the First Appeal by the Debtor-Appellant was very focused on seeking appellate review of the Bankruptcy Court's decision to dismiss the Chapter 11 case based on "bad faith" , under the U.S. Supreme Court's *Grigg Rule,* the Bankruptcy Court was stayed from further using the "bad faith" analysis as a basis for its decision on the fee application.

**B. In the First Appeal the Decision to Dismiss the Chapter 11 Case Based on "Bad Faith" Had Been Procedurally Disputed.**

In the First Appeal, the Debtor-Appellant gave strong procedural arguments as to why the Bankruptcy Court had erred in the Dismissal Hearing Decision and in the Preliminary Dismissal Order, in preliminarily dismissing the Debtor-Appellant's Chapter 11 case based on "bad faith". Procedurally, no evidentiary hearing was held by Bankruptcy Court on the issue of "bad faith", which under Section 1112 of the

Bankruptcy Code involved questions of fact, regarding the Debtors intentions and the feasibility of a reorganization. The Court gave neither the Debtor-Appellant, nor their counsel, the opportunity to address Bankruptcy Court's concerns in a hearing where proof and testimony could be evaluated and heard as to the issue of the feasibility of a reorganization. Furthermore, the Court at the hearing was focused on the fact that only one unsecured creditor had filed a Proof of Claim. However, under 11 U.S. Code § 1111(a) of the Bankruptcy Code, "*A proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules filed under section 521(a)(1) or 1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated*". Therefore, rather than just assuming that the dispute was a "two party dispute", the Court needed to follow Section 1111(a) which dictated that the unsecured debts listed in the Debtor's amended schedules were to be regarded as real claims by the Court.

While earlier, the U.S. Trustee had made a Motion to Dismiss, on August 29, 2024 (the "Motion to Dismiss"), over the initial schedules lacking unsecured creditors, the Debtor-Appellant had amended its schedules to added unsecured creditors, as it was allowed to do, and had believed that the issue was resolved. Neither the United States Trustee nor the Bankruptcy Court had disputed the legitimacy of the claims of such added unsecured creditors, even

though the claims were relatively low compared to the claim of the mortgage holder, who, as in many small Chapter 11 cases, was the principal creditor in the case. However, what distinguished our Chapter 11 case, was the vast amount of equity the Debtor-Appellant held in the Property, which it intended to refinance or sell to allow for a 100% payout to all of the Debtor-Appellant's Creditors.

11 U.S. Code § 1112(b)(1) of the Bankruptcy Code, which deals with dismissal or conversion of a Chapter 11 case states that "*Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate*". Therefore, 11 U.S. Code § 1112(b)(1) of the Bankruptcy Code emphasizes what needs to be regarded as: 1) adequate notice and 2) an evidentiary hearing, two requirements that were dismissive at the October 21, 2024 hearing because the Courts had believed the concerns of the Court had already been addressed. Adequate notice did not occur because the Debtor believed it addressed the concerns of the U.S. Trustee in amending its schedules to add creditors and in submitting an appraisal to the Court which showed a vast amount of equity. The secured creditor which was receiving adequate protection payments, had

a vast equity cushion and seemed understanding of need to have time to market the property. Furthermore, an evidentiary hearing did not take place since the Court made no effort to verify the amount of equity in the property and the time needed to market and sell the Property. It could have asked these questions at the October 24, 2024 hearing of the broker that had already been retained in the case as of October 11, 2024. Instead, the Court without any basis, in an unwarranted manner assumed that if the Debtor could not reorganize in 4-5 months, that its case was filed with the "bad faith" intent of merely staying a foreclosure sale.

11 U.S. Code § 1112(b)(3) of the Bankruptcy Code states that, "*The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph*".

Here the United States Trustee's Motion to Dismiss was made on August 29, 2024, but the hearing where the Court preliminarily dismissed the case was on October 21, 2024, which was 53 days later, and therefore in violation of 11 U.S. Code § 1112(b)(3). Furthermore, 11 U.S. Code § 1112(b)(3) mandates that the Court "shall decide the Motion not later than 15 days after commencement of such hearing". Whereas, the Motion to Dismiss was never decided in a final manner,

because the United States Trustee inexplicably failed to upload the dismissal order as they were required to do under the Preliminary Dismissal Order. This too violated Section 1112(b)(3).

11 U.S. Code § 1112(b)(2) of the Bankruptcy Code states the following:

> ***"****The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—*
>
> ***(A)*** *there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and*
>
> ***(B)*** *the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—*
>
> ***(i)*** *for which there exists a reasonable justification for the act or omission; and*
>
> ***(ii)*** *that will be cured within a reasonable period of time fixed by the court."*

Here, under Section 1112(b)(2), the Court at the October 21, 2024, Dismissal Hearing needed to focus on the question of the vast amount of equity in the property and whether it established a likelihood of reorganization. The Court again failed to follow Section 1112(b)(2), because it failed to fairly seek to gather and evaluate the facts before it, as it was required to do under Section 1112 of the Bankruptcy Code.

C. **In the First Appeal the Decision to Dismiss the Chapter 11 Case Based on "Bad Faith" Had Been Substantively Disputed.**

The Debtor-Appellant's First and still unresolved Appeal, disputed that the doctrine of "bad faith" applied n factual or legal grounds. As stated in the First Appeal, a petition is filed in bad faith when "it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability it would eventually emerge from the bankruptcy proceedings." *Cohoes Indus. Terminal, Inc.*, 931 F2d 222, 227 (2nd Cir. 1991). The Bankruptcy Court in its Disgorgement Decision, acknowledge that "the debtor indicated that it intended to obtain financing to pay off the Secured Creditor, or alternatively to sell the property." Therefore, the Court, itself, acknowledged that the facts support that there was a reasonable likelihood at the time of filing that the debtor had the intent to reorganize, thus the on the filing date the Debtor-Appellant did not file for Chapter 11 in "bad faith."

Furthermore, as part of the Appellant-Debtor's plausible reorganization plan to sell the property and retain its equity, Debtor-Appellant's counsel took the

appropriate legal steps to move toward selling the Property, with its Application on September 13, 2024, to retain a broker to sell the Property. In the Disgorgement Decision, the Court, sparingly, acknowledged that an application to retain a broker to sell the property was filed by Debtor-Appellant's Counsel only four days after they filed a motion to be retained as counsel, on September 13, 2024. However, shortly thereafter, on October 24, 2024, the Court directed that the Appellant-Debtor's case would be dismissed "upon the submission of a proposed dismissal order by the UST." [1/17/25 Decision]. However, our case was still at an early stage and realistically a completely implemented reorganization in Chapter 11 within 4-5 months is unrealistic in most cases. "Early on in a bankruptcy case, a debtor may be given a greater benefit of the doubt as to the success of a proposed feasible plan." *In re Lake Mich. Beach Pottawattamie Resort LLC*, 547 B.R. 899, 908 (Bankr. N.D. Ill. 2016), (Citing *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994). Here, the Debtor-Appellant was never given such grace, as the Court expected the Debtor-Appellant to not just propose, but also complete, a successful reorganization in 4-5 months. The Property was valued in an appraisal at $1,075,000.00, whereas the disputed secured proof claim, filed by the secured lender was only $625,952.85, resulting in estimated equity of $449,047.15.

This kind of equity is not present in most Chapter 11 cases. In *In re Lake Mich. Beach Pottawattamie Resort LLC*, the court found that because of "the undeniable

equity in the property, other forms of chapter 11 relief may be available to the debtor". The large amount of equity here which was not disputed by the creditor or by the Court, made a reorganization plan feasible that paid creditors 100% on their claims. Given these clear and obvious facts, it is hard to explain why the Bankruptcy Court misconstrued the Chapter 11 case, that was filed in good faith and was moving forward well towards reorganizing, both administratively and substantively. It appears that the Bankruptcy Court erred in not appropriately investigating and acknowledging the realities of the case as one filed in "*good faith*" and where a reorganization was very feasible.

## II. THE BANKRUPTCY COURT ERRED IN NOT ENGAGING IN THE STATUTORILY PROSCRIBED REVIEW OF THE FEE APPLICATION BASED ON TIME, EFFORT AND BENEFIT TO THE BANKRUPTCY ESTATE AND AS A NECESSARY AND FEASIBLE CHAPTER 11 CASE FILING.

### A. The Standards for Awarding Compensation to Counsel for Chapter 11 Debtor in Possession

Attorney compensation is governed by 11 U.S.C. § 330, which provides that counsel for the Debtor may be awarded "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a)(1)(A) and (B).

In our case, the Bankruptcy Court did not follow the requirements of Section 330 of the Bankruptcy Code and engage in a thorough review of the fee application in terms of evaluating the services rendered, their time allowance and their benefit to the

estate. Instead, the Bankruptcy Court valued all the services as worthless and of no benefit to the Debtor's estate, despite the fact that the case saved the equity in the Property from an imminent foreclosure auction and despite the fact that neither the Debtor, nor its creditors nor the U.S. Trustee, took the position that the case was unnecessary and of no benefit. In this regard the Bankruptcy Court took an extreme and untenable position that no other party in interest took.

The Bankruptcy Code Section 330, dealing with attorney compensation in a bankruptcy case, assumes fair notice and a fair hearing, something which did not take place in our case. Section 330 of the Bankruptcy Code which states:

11 U.S. Code § *330 of the Bankruptcy Code states the following:*

> *"(a) (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person employed under section 327 or 1103—*
>
> *(A )reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and*
>
> *(B )reimbursement for actual, necessary expenses.*

*(2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.*

*(3)In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—*

*(A) the time spent on such services;*

*(B) the rates charged for such services;*

*(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;*

*(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;*

*(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and*

> *(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.*
>
> *(4) (A)Except as provided in subparagraph (B), the court shall not allow compensation for—*
>
> *(i) unnecessary duplication of services; or*
>
> *(ii)services that were not—*
>
> *(I)reasonably likely to benefit the debtor's estate; or*
>
> *(II)necessary to the administration of the case."*

In terms of reviewing the Bankruptcy Court decision, the standard of review is that: "The bankruptcy court's legal conclusions are evaluated *de novo;* its findings of fact are subject to a clearly erroneous standard. *see* Fed.R.Bankr.P. 8013. We will determine that a finding is "clearly erroneous" when we are left with the definite and firm conviction that a mistake has been made. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)."

One of the main cases that guides the approach to attorney fee applications and Section 330 in the Second Circuit is *In re Ames Department Stores*, 76 F.3d 66 (2nd Circuit February 6, 1996), where the Second Circuit took a position that was strongly supportive of debtor's counsel fee applications. In Ames, the Second Circuit in vacating the decision of the district court, took an expansive view of the

legislative history of Section 330, as to the need for bankruptcy attorneys to be paid for their time and effort in the same manner as other attorneys.

The Second Circuit explained:

*"We therefore direct the district court to remand this matter to the bankruptcy court for a redetermination of Skadden's fee. We believe that in resolving the fee issue on remand, the bankruptcy court should avoid the niggardly approach of the district court, which would make Skadden's fee entitlement contingent upon a showing of actual benefit to the estate. Prior to the 1978 enactment of 11 U.S.C. § 330, economy of administration was the byword in bankruptcy proceedings, and applications for fee awards were closely scanned with this thought in mind. See Callaghan v. Reconstruction Finance Corp., 297 U.S. 464, 468-69, 56 S.Ct. 519, 521, 80 L.Ed. 804 (1936). In enacting section 330, Congress departed somewhat from this doctrine of strict review, taking the position that "compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases." In the Matter of UNR Indus., Inc., 986 F.2d 207, 208-09 (7th Cir.1993). With the 1994 amendments of section 330, Congress made another move towards greater equity in estate management. It provided that an award for fees might be made for services that were "beneficial at the time at which the service was rendered," § 330(a)(3)(C), and, by inverse construction, "reasonably likely to benefit the debtor's estate." Id. (a)(4)(A)(ii)(I).*

*Although debtors' attorneys were not specifically included in the coverage of the amended section 330, Collier asserts that this omission was inadvertent. See 2 Collier ¶ 330.01 at 330-8-9; ¶ 330.04 at 330-41-43. We are inclined to agree. However, the merit of Skadden's fee application should not hinge on the accuracy of Collier 's assertion. Where the benefits of services to the estate are the same, it makes no sense to treat performances of such benefits by debtors' attorneys differently than performances by other retained professionals. This accords with "the statute's aims that attorneys be reasonably compensated and that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation." UNR Indus., supra, 986 F.2d at 210. As reasoned in Collier, if the services of a debtor's attorney "are reasonably likely to benefit the debtor's estate, they should be compensable." 2 Collier ¶ 330.04 at 330-43. Upon remand, this is the test the bankruptcy court should apply in an objective manner, based upon what services a reasonable lawyer or legal firm would have performed in the same circumstances. See In the Matter of Taxman Clothing Co., 49 F.3d 310, 315 (7th Cir.1995)."*

Here in our case there is no dispute significant legal services have been rendered to the debtor over almost five months. Therefore, the Bankruptcy erred in not reviewing the fee application in a manner consistent with Section 330 as interpreted by the Ames decision.

The Fifth Circuit in adopting a prospective view of services that are "beneficial to the estate" in line with the other circuits, *Barron & Newburger, P.C. v. Tex. Skyline, Ltd. (In re Woerner), 783 F.3d 266 (5thCir. 2015)*, explained that the reasonableness of the potential benefit to the estate should be measured prospectively from the time the services are commenced. The Fifth Circuit now, overruled the prospective standard for which it was a "hold out" circuit and joined all the other circuits that ruled on the matter and agreed that value should not be measured retrospectively, as to whether the services actually resulted in a benefit.

*"In light of the plain language of § 330(a)(4)(A) after the 1994 amendments, the Second, Third, and Ninth Circuits have rejected the actual-benefit test in favor of a prospective standard. In In re Ames Department Stores, Inc., the Second Circuit expressly rejected an approach that would make fee awards "contingent upon a showing of actual benefit to the estate," opting instead to give effect to the statute's "reasonably likely to benefit the debtor's estate" standard. 76 F.3d at 71–72. The Third Circuit similarly rejected the actual-material-benefit standard, concluding that it departed from the statute by imposing a "heightened standard" and requiring evaluation "by hindsight." In re Top Grade Sausage, Inc., 227 F.3d 123, 131–32 (3d Cir.2000), abrogated on other grounds by Lamie, 540 U.S. 526, 124 S.Ct. 1023. Finally, the Ninth Circuit held that § 330(a)(4)(A) superseded that court's past precedent, which had "requir[ed] that the services actually provide an 'identifiable,*

*tangible and material benefit to the [debtor's] estate.' " In re Smith, 317 F.3d 918, 926–27(9th Cir.2002) (quoting In re Xebec, 147 B.R. 518, 523(B.A.P. 9th Cir.1992) ), abrogated on other grounds by Lamie, 540 U.S. 526, 124 S.Ct. 1023.*

*Pro–Snax 's only citation in support of the actual-benefit test was In re Melp, a case that interpreted the pre–1994 version of § 330. See 179 B.R. at 639 (quoting pre–1994 language). Indeed, the only other circuit precedents to apply an actual-benefit requirement either were decided before 1994 or relied entirely on pre–1994 precedent for determining "reasonable compensation." As discussed above, though, whereas the pre–1994 statutory language did not provide guidance on whether to consider the reasonable likelihood a service would benefit the estate, the post–1994 language foreclosed an actual-benefit test by requiring that the court evaluate the likelihood of benefit to the estate at the time the service was rendered. All other circuits that have construed the post–1994 version of § 330 have recognized this distinction. Pro–Snax 's reliance on Melp is misplaced and puts us out of step with our sister circuits.*

*We conclude that § 330 embraces the "reasonable at the time" standard for attorney compensation endorsed by our colleagues in the Second, Third, and Ninth Circuits. As explained above, the text and legislative history of § 330 contemplate a prospective standard for the award of attorney's fees relating to bankruptcy proceedings—one that looks to the necessity or reasonableness of legal services at*

*the time they were rendered. Under this framework, if a fee applicant establishes that its services were "necessary to the administration" of a bankruptcy case or "reasonably likely to benefit" the bankruptcy estate "at the time at which [they were] rendered," see 11 U.S.C. § 330(a)(3)(C), (4)(A), then the services are compensable.*

*In assessing the likelihood that legal services would benefit the estate, courts adhering to a prospective standard ordinarily consider, among other factors, the probability of success at the time the services were rendered, the reasonable costs of pursuing the action, what services a reasonable lawyer or legal firm would have performed in the same circumstances, whether the attorney's services could have been rendered by the Trustee and his or her staff, and any potential benefits to the estate (rather than to the individual debtor). See, e.g., In re Strand, 375 F.3d 854, 860–61 (9th Cir.2004) ; In re Top Grade Sausage, Inc.,227 F.3d at 132 ; In re Ames Dep't Stores, Inc., 76 F.3d at 72 ; In re Taxman Clothing Co., 49 F.3d at 313–15. Whether the services were ultimately successful is relevant to, but not dispositive of, attorney compensation. See 11 U.S.C. § 330(a)(3) ("[T]he court shall consider the nature, the extent and the value of such services, taking into account all relevant factors...." (emphasis added)); In re Smith, 317 F.3d at 926 ; In re Top Grade Sausage, Inc., 227 F.3d at 132 ; In re Ames Dep't Stores, Inc., 76 F.3d at 71 ; cf. Johnson, 488 F.2d at 718 (instructing courts to consider "the results obtained" by an attorney seeking compensation); see also In re Pilgrim's Pride*

*Corp.,690 F.3d 650, 656 (5th Cir.2012) (affirming the continued relevance of the Johnson factors)."*

However in our case even a retrospective view should agree that saving the significant equity in the property by filing the Chapter 11 case was certainly beneficial. But if a prospective standard is used, labeling the legal services in Chapter 11 that were related to saving of a property with equity as a "bad faith", certainly is in illogical, unfair and in error, when there was every indication at the commencement of this case that the Debtor, with Property having a vast amount of equity had a reasonable likelihood to reorganize.

The U.S. Supreme Court elaborated on services beneficial to the estate in allowing almost all services but having a debate between the majority and minority of the court if the time for the fee application itself should be compensated. In Re: *Baker Botts L.L.P. v. ASARCO LLC 135 S.Ct. 2158 192 L.Ed 2d 208 576 U.S. 131 (2015)*, the United States Supreme Court stated that "§330(a)(1) provides compensation for professionals… for all manner of work done in service of the estate administrator. Furthermore, §330(a)(1) allows 'reasonable compensation" for "actual, necessary services rendered." - Services is defined as "labor performed for another.' The Supreme Court concluded that the phrase "'reasonable compensation for services rendered' necessarily implies disinterested services in the interest of a client."

**B. The Bankruptcy Court Exceeded its Allowable Discretion.**

The Court, in our case erred, in determining that the only way to value services was whether there was a successful plan before the Court preliminarily dismissed the case after only 4-5 months, "Legal services may be 'reasonably likely' to benefit a Chapter 11 estate even if no plan of reorganization is confirmed (or even proposed) because 'benefit to the estate for services provided by counsel for a Chapter 11 debtor in possession is not restricted to success measured by confirmation of a plan or the prospect of confirming a plan,' nor is benefit to the estate limited solely to an economic or monetary benefit." *In re Lupton Consulting LLC*, 638 B.R. 897, (Bankr. E.D. Wis. 2022). In our case, the Bankruptcy Court reviewed the fee application of Debtor-Appellant's counsel, the Court gave significant weight to the fact that the estate "did not benefit" because there were no steps towards accomplishing reorganization goals. However, as stated in *In re Lupton Consulting LLC*, a benefit to the estate is not limited solely to an economic or monetary benefit. "Courts also may allow compensation where counsel's services 'promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy cases and related adversary proceedings.'" *Id*. (Citing *In re Spanjer Bros, Inc.*, 203 B.R. 85, 90 (Bankr. N.D. Ill. 1996).

In the Disgorgement Decision, The Court stated, "The Court for the purposes of this Decision, will not challenge that to the best of their ability the Weiss Firm did perform the services required by statute". Therefore, The Court acknowledged that the Weiss Firm performed services which warrant some level of compensation. The Court exceeded its discretion when it acknowledged that grounds for compensation existed but the Court decided to disgorge all the attorney fees. After all, the Debtor-Appellant's services promoted the bankruptcy in accordance with the procedures set forth in the Bankruptcy Code.

Although there is discretion accorded to a Court in determining fees, such discretion is limited by the law and the facts, neither of which where followed by the Bankruptcy Court. A bankruptcy court's decision to award attorney's fees is reviewed for abuse of discretion. See *In re Bayshore Wire Prods. Corp., 209 F.3d at 103* ("Like the District Court, we review the Bankruptcy Court's ... decision to award costs, attorney's fees, and damages for abuse of discretion."); *In re Emanuel, 460 Fed.Appx. 48, 50 (2d Cir.2012)* (summary order) ("We review the bankruptcy court's denial of attorney's fees for abuse of discretion...."); *In re JLM. Inc., 210 B.R. 19, 23 (2d Cir. BAP 1997)* ("Bankruptcy courts enjoy wide discretion in determining reasonable fee awards, which discretion will not be disturbed by an appellate court absent a showing that it was abused."). In consequence, a reviewing court should not interfere with a bankruptcy court's decision absent a clear abuse of discretion. See *In*

*re Arlan's Dep't Stores, Inc., 615 F.2d 925, 943 (2d Cir. 1979); Howard v. High River Ltd. P'ship, 369 B.R. 111, 114 (S.D.N.Y.2007)* (*A bankruptcy court's decision with regard to compensation for services performed during bankruptcy proceedings deserves great deference."). [31 As the Second Circuit has held,

As the Second Circuit has held *In re Tribecca Market, LLC, 516 B.R. (2014)* has held,

"[a] bankruptcy court exceeds its allowable discretion where its decision [i] rests". on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or [ii] cannot be found within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual *270 finding." *Schwartz v. Geltzer (In Re Smith), 507 F.3d 64, 73 (2d Cir. 2007)*; accord *Johnson v. Univ. of Rochester Med. Ctr., 642 F3d 121, 125 (2d Cir.2011)*".

Here, in our case's Current Appeal, the Bankruptcy Court in its Disgorgement Decision and Order, exceeded its allowable discretion because its denial of all attorney fees was based on a clear error of law: in that the Bankruptcy Court incorrectly deemed the Chapter 11 case to be a "bad faith" filing, and incorrectly used such justification to both dismiss the Chapter 11 case (the subject of the First Appeal) and to completely deny Appellant-Debtor's counsel attorney fees (the subject of the current appeal). The Disgorgement Decision and Order were also

based on a clearly erroneous factual finding in that the Bankruptcy Court's found, without the required notice and hearing, that the case had no feasible method of reorganization, and that the Debtor-Appellant only filed the case to obtain a bankruptcy stay of an imminent foreclosure sale. Rather than follow the required protocol under the Bankruptcy Code Section 330 and the rules for evaluating professional fee applications, the Bankruptcy Court's without adequate notice or a hearing, as required under both Sections 11 U.S.C. §1112 and 330 of the U.S. Bankruptcy Code or any evidentiary proof engaged in wrongful assumptions about the Appellant-Debtor and their counsel, in terms of their motivations for filing the Chapter 11 case, and concluded wrongly that the only purpose of the case was to obtain a stay of the foreclosure sale. However, even the administrative tasks listed by the Court and staying of the foreclosure sale have value and provide a benefit to the estate if they preserve the equity in the estate. As such the Courts reasoning cannot be found within the range of permissible decisions.

## CONCLUSION

The Bankruptcy Court erred in the decision, dated January 17, 2025 [(Bankr. E.D.N.Y.) ECF #59], and Order dated January 24, 2025 [(Bankr. E.D.N.Y.) ECF #60], in using the "bad faith" justification as grounds to completely deny Appellant-Debtor's application for compensation. The Court erred because the issue of "bad faith" was already on appeal and pending before this District Court,

pursuant to the First Appeal, as to the dismissal of the case, where the Court had used such reasoning, for which the Debtor-Appellant is seeking appellant review. Under the Supreme Court "Griggs Rule", as related in *Griggs v. Provident Consumer Discount Co., 459 U.S. 56 (1982),* once an issue within a case is on appeal, the jurisdiction over that issue is vested with the appellate court and the lower court is stayed from revisiting such issue, which needs to be decided by the appellate court. Here, under the Griggs Rule, jurisdiction over the "bad faith" issue vested in the District Court and the Bankruptcy Court was stayed from revisiting the issue while it was in appeal.

However, even if the Grigg Rule did not apply, the Court had erred in deciding that the case was a "bad faith" case, in that the vast amount of equity in the property had allowed the Debtor to proceed to either sell or refinance the Property, which the Debtor had taken steps to do. The assumption by the Court that the Debtor was unable to reorganize, was not based on any evidentiary hearing or situation where the Court was able to accurately assess the facts. 11 U.S. Code § 1112(b)(1), which deals with dismissal requires the Court to give adequate notice and a hearing before it dismisses a case. As shown in this brief, the Court failed to follow 11 U.S. Code § 1112(b)(1). Also, as to the issue of the Debtor-Appellant fee application, the Court was required to follow 11 U.S. Code § 330 of the Bankruptcy Code, which the Court failed to systematically follow. The Court had implied and/or acknowledged that

Debtor-Appellant's Counsel's staying the foreclosure sale was beneficial, and that Debtor's counsel had shown time spent in the case, tasks accomplished in the case and the retention of a real estate broker, among many other tasks. However, the Court seemed to be focused on the lack of a viable plan that was actually fully implanted and finalized only four months into the case. The Debtor was proceeding in a positive manner during the case and the forced dismissal by the Court came at a very preliminary stage and was disruptive. There was absolutely no need to dismiss this Chapter 11 case, since it was a viable case, where the Debtor was making adequate protection payments and meeting all of its administrative requirements. The secured creditor was paid over $315,000 post judgment of foreclosure and sale because the Debtor had sought a settlement that was not achieved. There was significant equity in the property, that would have paid a 100% payout to the secured and unsecured creditors and none of the creditors in the case were objecting to how the case was proceeding. The Court took it upon itself to terminate a perfectly good and viable Chapter 11 Bankruptcy case and to criticize the Debtor and its attorney in an unwarranted manner that is contrary to the policy of the Second Circuit as stated in the Ames Department case cited herein.

Under the circumstances, this District Court, reviewing the case as an appellate court, should reverse the Bankruptcy Court's decision, dated January 17, 2025 [(Bankr. E.D.N.Y.) ECF #59], and Order dated January 24, 2025 [(Bankr.

E.D.N.Y.) ECF #60] and allow a review of Debtor's Counsel's attorney fee application for time beneficial to the estate per the prevailing precedent as it applies to Section 330 of the Bankruptcy Code.

Dated: Melville, New York
March 3, 2025

RONALD D. WEISS, P.C.
Attorneys for Plaintiff-Appellant

*/s/Ronald D. Weiss*
Ronald D. Weiss, Esq.
445 Broadhollow Road,
Suite CL-10
Melville, NY 11747
(631)271-3737

**CERTIFICATE OF COMPLIANCE WITH FED R. BANKER P. 8015(A)(7)**

I, Ronald D. Weiss, counsel for Plaintiff-Appellant, certify that this brief was prepared using Microsoft Word, and that this processing program has been applied to include all text other than what Rule 8015(g) allows to be excluded in preparing the following word count.

I further certify that this brief counts 8,968 words.

I further certify that the type size used in this brief is font size 14.

/s/ Ronald D. Weiss
Ronald D. Weiss
Attorney for Plaintiff-Appellant