**No. 2:25-cv-00606-NCM**

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

In re HOME BUILDING CORP., Debtor.

---

HOME BUILDING CORP., Appellant,

v.

WILLIAM K. HARRINGTON, United States Trustee, Appellee.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

**BRIEF OF APPELLEE WILLIAM K. HARRINGTON,**
**UNITED STATES TRUSTEE**

---

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.: (202) 307-1399
frederick.g.hall@usdoj.gov

WILLIAM K. HARRINGTON
United States Trustee for Region 2
CHRISTINE G. BLACK
Assistant United States Trustee
ANDREW D. VELEZ-RIVERA
Trial Attorney

Department of Justice
Office of the United States Trustee
Alphonse D'Amato
Federal Courthouse
560 Federal Plaza, Room 560
Central Islip, NY 11722
Tel.: (631) 715-7800
andy.velez-rivera@usdoj.gov

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

STATEMENT OF APPELLATE JURISDICTION ........ 2

STATEMENT OF THE ISSUES ........ 3

STATEMENT OF THE CASE ........ 4

I. Statutory Framework ........ 4

A. General principles for chapter 11 bankruptcy cases ........ 4

B. Confirming a chapter 11 plan ........ 5

C. Retention and payment of professionals in chapter 11 ........ 6

D. The role of the United States Trustee ........ 7

II. Statement Of The Facts ........ 8

A. Home Building files for bankruptcy to stall a state court foreclosure judgment. ........ 8

B. Home Building's plan for the bankruptcy case centers on its representation that its prior payments to Ms. Kadianakis were not credited. ........ 9

C. Home Building's representations about uncredited payments to Ms. Kadianakis are proven false, and the bankruptcy court finds cause exists under 11 U.S.C. § 1112(b). ........ 13

D. The bankruptcy court denies the Weiss Firm's application for attorneys' fees ........ 17

SUMMARY OF THE ARGUMENT ........ 20

STANDARD OF REVIEW ........ 22

ARGUMENT ........ 23

I. The Bankruptcy Court Did Not Abuse Its Discretion In Denying The Weiss Firm's Application For Fees. ........ 23

A. The Weiss Firm failed to establish that its services were reasonably likely to benefit the estate ........ 24

B. The Weiss Firm's characterization of its work is inconsistent with the facts and law. ....29

C. The Weiss Firm never requested an evidentiary hearing on its application. ....32

II. The First Appeal Did Not Prevent The Bankruptcy Court From Ruling On The Weiss Firm's Application For Compensation. ....33

A. This Court has not accepted jurisdiction over the First Appeal. ....35

B. The Weiss Firm's fee application was not a matter involved in the First Appeal. ....37

III. To The Extent This Court Finds The Issue Relevant, The Bankruptcy Court's Finding Of Cause Under Section 1112(b) Was Not An Abuse Of Discretion. ....39

A. Cause existed under section 1112(b)(4)(J) because Home Building failed to file a plan and had shown no sign of reorganizing. ....41

B. Cause existed due to bad faith under Second Circuit precedent. ....43

C. Home Building did not establish that section 1112(b)(2) applied. ....47

D. The remaining arguments fail. ....49

CONCLUSION ....50

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Ames Dep't Stores, Inc.*,
76 F.3d 66 (2d Cir. 1996), *abrogated on other grounds by Lamie v. United States Trustee*, 540 U.S. 526 (2004) ....24, 30, 31

*Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*,
783 F.3d 266 (5th Cir. 2015) (en banc) ....31

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*,
113 F.3d 1304 (2d Cir. 1997) ....*passim*

*Casse v. Key Bank N.A. (In re Casse)*,
198 F.3d 327 (2d Cir. 1999) ....28

*CFTC v. Weintraub*,
471 U.S. 343 (1985)....5

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023)....33, 34, 39

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) (per curiam)....*passim*

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024)....7

*Harris v. Viegelahn*,
575 U.S. 510 (2015)....4

*Home Building Corp. v. Harrington (In re Home Building Corp.)*,
No. 2:24-cv-07643-NCM (E.D.N.Y.)....16

*In re Hood Farms, Inc.*,
639 B.R. 788 (Bankr. M.D. Ga. 2022) ....37

*Hoover v. Harrington (In re Hoover)*,
828 F.3d 5 (1st Cir. 2016)....41

*Huezo v. Ball (In re Huezo)*,
No. CC-19-1260-LTaF, 2020 WL 4199950 (B.A.P. 9th Cir. July 22, 2020) (mem.) ....................35

*Keate v. Miller (In re Kohl)*,
95 F.3d 713 (8th Cir. 1996) ....................28, 29

*Keene Corp. v. Coleman (In re Keene Corp.)*,
166 B.R. 31 (Bankr. S.D.N.Y. 1994)....................35

*Lancaster v. Independent Sch. Dist. No. 5*,
149 F.3d 1228 (10th Cir. 1998) ....................38

*Leonhard v. United States*,
633 F.2d 599 (2d Cir. 1980) ....................35

*In re Lupton Consulting LLC*,
638 B.R. 897 (Bankr. E.D. Wis. 2022)....................31

*In re MF Global Holdings Ltd.*,
465 B.R. 736 (Bankr. S.D.N.Y. 2012)....................47

*In re Motors Liquidation Co.*,
943 F.3d 125 (2d Cir. 2019) ....................3

*New York State Nat'l Org. for Women v. Terry*,
886 F.2d 1339 (2d Cir. 1989) ....................34

*In re Poseidon Pools of Am.*,
216 B.R. 98 (E.D.N.Y. 1997) ....................2, 22

*In re Pugh*,
No. 18-cv-06508-JMA, 2020 WL 2836823 (E.D.N.Y. May 31, 2020) ....................28

*Rains v. Flinn (In re Rains)*,
428 F.3d 893 (9th Cir. 2005) ....................35

*Retirement Bd. of Policemen's Annuity & Benefit Fund. v. Bank of N.Y. Mellon*, 297 F.R.D. 218 (S.D.N.Y. 2013)....................36

*Ritzen Grp. Inc. v. Jackson Masonry, LLC*,
589 U.S. 35 (2020) .......... 36, 37

*Rora LLC v. 404 E. 79th St, Lender LLC*,
630 B.R. 876 (E.D.N.Y. 2021) .......... 32, 33

*Tancredi v. Metropolitan Life Ins. Co.*,
378 F.3d 220 (2d Cir. 2004) .......... 38

*Taylor v. Board of Educ. of City Sch. Dist. of New Rochelle*,
288 F.2d 600 (2d Cir. 1961) .......... 36

*Tereshchenko v. Karimi*,
102 F.4th 111 (2d Cir. 2024) .......... 23

*TLA Claimholders Grp. v. LATAM Airlines Grp. S.A. (In re LATAM Airlines Grp. S.A.)*, 55 F.4th 377 (2d Cir. 2022) .......... 5

*In re Village Apothecary, Inc.*,
45 F.4th 940 (6th Cir. 2022) .......... 7

*Wolf v. Weinstein*,
372 U.S. 633 (1963) .......... 5

*Xu v. United States Trustee (In re Arebalo)*,
No. 10 CV 2025(SJF), 2011 WL 1336676 (E.D.N.Y. Mar. 31, 2011) .......... 7, 23

*Zervos v. Verizon N.Y., Inc.*,
252 F.3d 163 (2d Cir. 2001) .......... 23

**Statutes**

11 U.S.C.
§ 102(1) .......... 49
§ 301(a) .......... 4
§ 307 .......... 8
§ 327 .......... 6
§ 327(a) .......... 6
§ 330 .......... 8
§ 330(a) .......... *passim*

§ 330(a)(1) ....................................................................................................6
§ 330(a)(3) ....................................................................................................7
§ 330(a)(4) ....................................................................................30, 38, 39
§ 330(a)(4)(A)(ii) ..........................................................................................7
§ 330(a)(4)(A)(ii)(I) ...................................................................2, 18, 20, 23
§ 364(d) .........................................................................................14, 42, 43
§ 503(b)(2) ....................................................................................................7
§ 507(a)(2) ....................................................................................................7
§ 541(a) ........................................................................................................4
§ 549(a) ......................................................................................................25
§ 704(a)(2) ....................................................................................................5
§ 1106(a)(5) ..................................................................................................5
§ 1107(a) ......................................................................................................4
§ 1108 ...........................................................................................................4
§ 1112(b) ...........................................................................................*passim*
§ 1112(b)(1) .........................................................................12, 36, 40, 47
§ 1112(b)(2) .................................................................................40, 41, 47
§ 1112(b)(3) ................................................................................................50
§ 1112(b)(4)(J) ....................................................................12, 40, 41, 50
§ 1115 ...........................................................................................................4
§§ 1121 – 1129 .............................................................................................4
§ 1121(a) ......................................................................................................5
§ 1121(b) ...............................................................................................5, 41, 43
§ 1122 ...........................................................................................................5
§ 1126 ...........................................................................................................4
§ 1129 .......................................................................................................4, 5
§ 1129(a)(8) ..........................................................................................5, 6, 12
§ 1129(b) ......................................................................................................6
§ 1129(b)(2) ................................................................................................12
§ 1129(b)(2)(A)(i) .........................................................................................6
§ 1141(a) ......................................................................................................4

28 U.S.C.
§ 157(a) ........................................................................................................2
§ 157(b) ........................................................................................................2
§ 158(a) ..................................................................................................16, 35
§ 158(a)(1) ................................................................................................2, 35
§ 158(a)(3) .......................................................................21, 34, 35, 37
§ 158(c)(2) ....................................................................................................3
§ 586(a)(3)(A)(i) ...........................................................................................8

§ 1292(b) .....36
§ 1334(a) .....2

**Other Authorities**

E.D.N.Y. Administrative Order #264 (Aug. 28, 1986). .....2

E.D.N.Y. LBR 9014-2 .....32

Fed. R. Bankr. P.
1017(f)(1) .....37
8002 .....3, 35
8004 .....37
8009(a)(1)(B) .....35
9014 .....37

## INTRODUCTION

Ronald D. Weiss, P.C.'s (the "Weiss Firm") client, Home Building Corp. ("Home Building"), filed a bankruptcy petition under chapter 11 of the Bankruptcy Code after its secured lender obtained a foreclosure judgment in state court. As a chapter 11 debtor in possession of its bankruptcy estate, Home Building owed fiduciary duties to its creditors, including its secured judgment creditor, who accounted for more than 99% of Home Building's debt.

The Weiss Firm repeatedly represented to the bankruptcy court that Home Building needed bankruptcy protection so it could adjust the foreclosure judgment to account for uncredited payments. The Weiss Firm said Home Building would get third-party financing or sell its real estate to pay the judgment.

But at a hearing four months into the case, an attorney from the Weiss Firm admitted to the bankruptcy court that Home Building's key theory of uncredited payments was baseless. The evidence showing the theory was baseless was filed with the court by the Weiss Firm itself, but the Weiss Firm apparently never looked at it. Moreover, its time records showed that the Weiss Firm never communicated with the secured judgment creditor at all; that the Weiss Firm made no efforts to obtain third-party financing or to sell the real estate; and that, despite a court-ordered deadline and a promise to the bankruptcy court, the Weiss Firm had not begun any work on a reorganization plan.

The Weiss Firm applied for an award of attorneys' fees. The bankruptcy court determined that, under the facts and circumstances of Home Building's bankruptcy case, the Weiss Firm's services were not reasonably likely to benefit Home Building's bankruptcy estate and therefore denied the Weiss Firm's application for fees under 11 U.S.C. § 330(a)(4)(A)(ii)(I). The bankruptcy court's order was not an abuse of discretion, and this Court should affirm.

## STATEMENT OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1), which grants to district courts appellate jurisdiction to review final orders of bankruptcy courts.

The bankruptcy court had jurisdiction over the debtor's chapter 11 bankruptcy case under 28 U.S.C. § 1334(a) and had authority to preside over the case and to decide the Weiss Firm's 11 U.S.C. § 330(a) application for compensation under 28 U.S.C. § 157(a) and (b) and this Court's Administrative Order #264 (Aug. 28, 1986). The bankruptcy court's order denying the Weiss Firm's application for attorneys' fees was entered on January 24, 2025. App. at A232 – A234.[1] This order was final for purposes of 28 U.S.C. § 158(a)(1). *See In re Poseidon Pools of Am.*, 216 B.R. 98, 99 (E.D.N.Y. 1997).

---

[1] Citations to "App. at A___" are to the Appendix of Appellee William K. Harrington, United States Trustee, filed contemporaneously with this brief.

A timely notice of appeal was filed under 28 U.S.C. § 158(c)(2) and Federal Rule of Bankruptcy Procedure 8002 on January 31, 2025. App. at A235 – A260. The notice of appeal lists Home Building as the appellant. App. at A235, A238. The Weiss Firm is the proper appellant, because its application was denied, and it wants to be paid. Nonetheless, this is not a jurisdictional defect. *See In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) ("[E]ven if the plaintiffs in Eason are not expressly named in the notice, their intent to appeal is otherwise clear by reference to the law firm representing them.").

## STATEMENT OF THE ISSUES

I. Did the bankruptcy court abuse its discretion in denying the Weiss Firm's application for attorneys' fees under 11 U.S.C. § 330(a)?

II. Did the bankruptcy court rule on the Weiss Firm's fee application in violation of the doctrine articulated in *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) (per curiam)?

III. Is the bankruptcy court's order finding cause under 11 U.S.C. § 1112(b) relevant to this appeal and, if so, was it an abuse of discretion?

## STATEMENT OF THE CASE

### I. Statutory Framework

#### A. General principles for chapter 11 bankruptcy cases

Chapter 11 of the Bankruptcy Code reflects Congress's recognition that a debtor may suffer from temporary financial distress but may nevertheless be able to preserve its business as a going concern if it can resolve that distress. A chapter 11 bankruptcy typically results in a "plan" that can either provide for the reorganization and ongoing operation of the debtor's business or a liquidation and distribution to creditors. *See* 11 U.S.C. §§ 1121 – 1129.

Creditors may vote on a proposed plan, and the court must determine whether the plan meets certain statutory requirements before the plan is confirmed. 11 U.S.C. §§ 1126, 1129. Upon confirmation, the plan sets forth how the debtor's creditors will be paid going forward. 11 U.S.C. § 1141(a).

When an entity voluntarily files a case under chapter 11 of the Bankruptcy Code, an estate is automatically created. *See* 11 U.S.C. §§ 301(a), 541(a), 1115. All the debtor's "assets, with specified exemptions, are immediately transferred to [the] bankruptcy estate." *Harris v. Viegelahn*, 575 U.S. 510, 513 (2015).

Unless a trustee is appointed to run the debtor and its business, a chapter 11 debtor serves as a "debtor in possession" with the power to continue operating its business and with fiduciary duties to both creditors and equity interests. *See* 11

U.S.C. §§ 1107(a), 1108; *CFTC v. Weintraub*, 471 U.S. 343, 355 (1985). The debtor in possession "has the duty to maximize the value of the estate." *Id*. at 352; *see also* 11 U.S.C. § 704(a)(2) (trustee is "accountable for all property received"). Accordingly, debtors in possession serve as fiduciaries to their creditors and the bankruptcy estate. *See, e.g*., *CFTC*, 471 U.S. at 355; *Wolf v. Weinstein*, 372 U.S. 633, 649-50 (1963). They must propose a reorganization plan "as soon as practicable." 11 U.S.C. § 1106(a)(5); *see also* 11 U.S.C. § 1121(a)-(b).

**B. Confirming a chapter 11 plan**

Before a bankruptcy court may confirm a chapter 11 plan, the debtor in possession or other plan proponent must establish that the plan complies with 11 U.S.C. § 1129. Chapter 11 provides that a debtor's creditors be divided into classes based on the type of their claim and their interest. *See generally* 11 U.S.C. § 1122. One common class is secured creditors, those whose claim against the debtor is protected by a security interest on property.

One of the requirements to confirm a plan is that "each class of claims or interests" either "has accepted the plan" or "is not impaired under the plan." 11 U.S.C. § 1129(a)(8). The Bankruptcy Code defines "impaired" "in the broadest possible terms": "any change in legal, equitable or contractual rights creates impairment." *TLA Claimholders Grp. v. LATAM Airlines Grp. S.A. (In re LATAM Airlines Grp. S.A.)*, 55 F.4th 377, 384 (2d Cir. 2022). Thus, to comply with section

1129(a)(8), for each class of creditors, a plan either must either be accepted by the class of creditors or must not change the class's rights in any way.

Section 1129(b) provides limited circumstances in which a plan may be confirmed despite impairing a non-accepting class of creditors and so does not comply with section 1129(a)(8)—commonly called a "cramdown" plan. However, recognizing their security interests, section 1129(b) grants special protection to secured creditors in "cramdown" plans. Relevant here, a plan may be "crammed down" on secured creditors only if the creditors retain their security interests and receive "deferred cash payments totaling at least the allowed amount of [their] claim[s] . . . as of the effective date of the plan." 11 U.S.C. § 1129(b)(2)(A)(i).

**C. Retention and payment of professionals in chapter 11**

One of the powers of a bankruptcy trustee that a debtor in possession in a chapter 11 case enjoys is the right to ask the bankruptcy court's permission to employ attorneys and other professionals. *See* 11 U.S.C. § 327(a). Section 330(a) governs the compensation of attorneys and professionals for the debtor in possession employed pursuant to section 327.

Section 330(a) allows the bankruptcy court to award to these professionals "reasonable compensation for actual, necessary services rendered" by the professional and "reimbursement of actual, necessary expenses." 11 U.S.C.

§ 330(a)(1). Section 330(a)(3) identifies some factors a court must consider in determining reasonable compensation.

The bankruptcy court, however, "shall not allow compensation for" "services that were not" "reasonably likely to benefit the debtor's estate" nor "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A)(ii). "[T]he burden of proof as to entitlement to and reasonableness of a fee request is upon the moving party." *In re Village Apothecary, Inc.*, 45 F.4th 940, 952 (6th Cir. 2022); *see also Xu v. United States Trustee (In re Arebalo)*, No. 10 CV 2025(SJF), 2011 WL 1336676, at *2 (E.D.N.Y. Mar. 31, 2011) ("The applicant bears the burden of proof on his claim for compensation.") (cleaned up).

If a bankruptcy court awards fees under section 330(a), the award becomes an administrative expense of the estate and is given priority, allowing a properly employed professional with an award of reasonable compensation to be paid before most unsecured creditors. 11 U.S.C. §§ 503(b)(2), 507(a)(2). But if the bankruptcy court denies an award, the professional has no legal right to payment.

**D. The role of the United States Trustee**

The United States Trustee is an official of the Department of Justice "charged with promoting the integrity of the bankruptcy system for all stakeholders." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 212-13 (2024). The United States Trustee "may raise and may appear and be heard on any issue in

any case or proceeding under" the Bankruptcy Code. 11 U.S.C. § 307. Congress requires the United States Trustee to "supervise the administration of cases" under chapter 11, including "reviewing . . . applications filed for compensation and reimbursement under section 330." 28 U.S.C. § 586(a)(3)(A)(i).

## II. Statement Of The Facts

### A. Home Building files for bankruptcy to stall a state court foreclosure judgment.

In 2015, Home Building promised to pay Pitsa Kadianakis $360,000 with interest and with an April 2017 maturity date. App. at A105 – A109. As security, Home Building executed a mortgage in Ms. Kadianakis's favor for a piece of commercial real estate in West Babylon, New York. App. at A110 – A122.

Home Building defaulted on the note, and, in April 2023, Ms. Kadianakis secured a New York state court judgment of foreclosure on the West Babylon property to satisfy her claim for $765,440. App. at A094 – A104. Home Building and Ms. Kadianakis twice stipulated to adjourn the foreclosure sale. In the first stipulation, signed in September 2023, Ms. Kadianakis agreed to postpone the foreclosure sale by two months in exchange for a payment of $65,882 and Home Building's promise to fully satisfying the mortgage within two months. App. at A127 – A131. In the second stipulation, signed in January 2024, Ms. Kadianakis agreed to cancel a scheduled sale in exchange for a payment of $245,000 towards the mortgage, a payment of $5,000 towards her attorneys' fees, and a promise to

satisfy the mortgage within three months. App. at A132 – A133. Home Building did not fully satisfy the mortgage, so Ms. Kadianakis rescheduled the foreclosure sale.

On June 10, 2024—*i.e.*, the eve of the foreclosure sale—Home Building, represented by the Weiss Firm, filed a chapter 11 petition. The accompanying schedules listed five assets: the West Babylon property worth $1.5 million, a bank account with $3,000 in it, a $4,500 security deposit, unquantified accounts receivable, and unquantified rights to insurance contracts. App. at A021 – A025. The schedules listed only a single creditor: Ms. Kadianakis. App. at A026 – A027. The schedules also reported annual rental income of $120,000. App. at A030.

Home Building and the Weiss Firm disclosed that Home Building had paid the Weiss Firm $30,000 for attorneys' fees and $2,500 for expenses associated with the case. App. at A032, A037.

The bankruptcy court set a deadline of October 8, 2024, for Home Building to propose a plan. App. at A001 – A002 (docket text for ECF No. 1).

### B. Home Building's plan for the bankruptcy case centers on its representation that its prior payments to Ms. Kadianakis were not credited.

A month into the case, in mid-July 2024, the bankruptcy court held an initial case management conference. The bankruptcy court questioned the need for the

case to be in bankruptcy court: "You have no unsecured creditors, you owe the bank $480,000,[[2]] and the property's worth a million-and-a-half. . . . What are we doing here?" App. at A265. Home Building's counsel from the Weiss Firm explained, "[W]e're going to contemporaneously attack the judgment of foreclosure" in state court because Ms. Kadianakis "ha[d] not credited the payments that" Home Building had made. App. at A266 – A267. Counsel suggested that, once the foreclosure judgment was recalculated, Home Building would "[a]pply for debt financing and pay [the debt] off." App. at A267.

The bankruptcy court encouraged the debtor to consider refinancing and further expressed doubt that the debtor could confirm a plan because there were no creditor classes besides Ms. Kadianakis to vote in favor of a plan. App. at A270. The bankruptcy court allowed the case to proceed for another month to "see what [Home Building] c[ould] get out of [Ms. Kadianakis] within that period of time." App. at A271.

The day before the next status conference in mid-August 2024, Home Building amended its schedules to list three unsecured creditors: an accountant, owed $1,000; the Suffolk County Comptroller, owed $3,000; and the Suffolk County Sewer District, owed $500. App. at A056.

[2] Home Building scheduled Ms. Kadianakis's claim for $480,000. App. at A026. Ms. Kadianakis's proof of claim, filed later in the case, asserted she was owed over $625,000. App. at A091.

At the August 2024 conference, the bankruptcy court again asked, "Why are we here? . . . How do you ever confirm a plan?" App. at A323. Counsel from the Weiss Firm pointed to the unsecured creditors, who could vote in favor of a plan. App. at A323. The bankruptcy court was not convinced: "So, you have unsecured Creditors who would vote in favor of a plan where you have to pay the secured creditor 100 cents on the dollar. [Ms. Kadianakis would] be happy to take it today. . . . You can't cram [Ms. Kadianakis] down." App. at A323. Counsel again asserted, "[T]he Debtor's principal took out a $250,000 mortgage . . . and paid it to the secured Creditor, which has not been credited to the account at all." App. at A323. The bankruptcy court explained that Ms. Kadianakis had "a judgment that [] can't be attacked here" and that "[t]here's a property that can pay the judgment, albeit they'd have to sell it, and $5,000 of unsecured debt, which isn't worth the cost of filing a plan and disclosure statement." App. at A324.

Counsel for Ms. Kadianakis confirmed that she merely wanted to be paid in full, and disagreed with the Weiss Firm's representation about uncredited payments: "We've given them credit for every payment that's been made." App. at A325. The bankruptcy court gave Home Building another month to come to an agreement with Ms. Kadianakis. App. at A325.

Before the next status conference, the United States Trustee moved to dismiss the case or, in the alternative, to convert it to chapter 7 under 11 U.S.C.

§ 1112(b). The United States Trustee argued cause to dismiss existed in two ways. *First*, he argued that Home Building would not be able to confirm a plan. App. at A068 – A071; *see* 11 U.S.C. § 1112(b)(1), (b)(4)(J) (failure to confirm a plan is cause to convert or dismiss). As a practical matter, under sections 1129(a)(8) and 1129(b)(2), Home Building would have to pay Ms. Kadianakis in full to confirm any chapter 11 plan because of her state court foreclosure judgment. Yet Home Building did not have the cash to pay her and had taken no steps towards a sale of the West Babylon property to raise the necessary funds.

*Second*, the United States Trustee argued that the case met the criteria that the Second Circuit has found indicated a bad-faith bankruptcy petition. App. at A071 – A072; *see C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997). Home Building had essentially a single asset, its unsecured creditors' claims were negligible compared to its secured creditor's claim, its asset was the subject of a foreclosure action, its financial condition was a two-party dispute, and the timing of the filing indicated an intent to delay the secured creditor's legitimate rights.

Apparently in response to the United States Trustee's motion, Home Building filed an application to employ a real estate broker and an application to employ the Weiss Firm as counsel before the status conference. App. at A003 – A004. The bankruptcy court approved both applications. App. at A004.

At the next status conference in mid-September 2024, counsel from the Weiss Firm explained that Home Building intended to propose a plan that would pay Ms. Kadianakis without selling the West Babylon property, but that Home Building would sell the property if the plan could not be fully funded. App. at A191 – A192. Counsel also notified the bankruptcy court that Home Building would seek a comfort order that the Bankruptcy Code's automatic stay would not apply to Home Building's efforts to attack Ms. Kadianakis's foreclosure judgment in state court. App. at A193 – A194. The bankruptcy court again encouraged Home Building to file its plan. App. at A194. Counsel from the Weiss Firm confirmed that Home Building would file a plan before the next status conference the following month. App. at A196.

**C. Home Building's representations about uncredited payments to Ms. Kadianakis are proven false, and the bankruptcy court finds cause exists under 11 U.S.C. § 1112(b).**

Despite what the Weiss Firm told the bankruptcy court and the October 8, 2024, deadline to propose a plan, Home Building did not file a proposed chapter 11 plan. But it did oppose the United States Trustee's motion to dismiss. Home Building's principal, Eugeniusz Rogoza, submitted an affidavit with the opposition. App. at A086 – A089. Mr. Rogoza asserted that Home Building "ha[d] obtained third party financing but [wa]s uncertain the amount necessary to cure the entire debt." App. at A087. He provided no details about the supposed

financing, and Home Building never applied for the court's authorization to incur the debt associated with third party financing. *See* 11 U.S.C. § 364(d) (requiring court authorization to incur such debt).

Mr. Rogoza also stated that Home Building "dispute[d] the amount of the claim of" Ms. Kadianakis because he "obtained a mortgage in amount of approximately $250,000.00 and tendered such funds to" Ms. Kadianakis, but Home Building "d[id] not believe that such funds have been accredited to the balance." App. at A087. Accordingly, he said that "[i]t is [Home Building's] intention to file a motion to recalculate the amount due and owing" in the state court foreclosure action. App. at A088. And once the amount owing was corrected, he said "it is [Home Building's] intention to pay the balance in full, from third party funding." App. at A088.

Home Building attached Ms. Kadianakis's filed proof of claim to its objection. Despite what the Weiss Firm told the bankruptcy court and what Mr. Rogoza's sworn affidavit said, the proof of claim showed that Ms. Kadianakis indeed had credited both payments Home Building made under the terms of the two stipulations to adjourn the foreclosure sale. App. at A093, A127 – A133.

Ms. Kadianakis also filed a response supporting the United States Trustee's motion. She explained, "A simple review of the Calculation Sheet attached to the

[proof of] claim . . . clearly demonstrates how [Mr. Rogoza's $250,000 payment] was applied to the amounts due." App. at A125.

At a hearing on the United States Trustee's motion, the bankruptcy court asked counsel from the Weiss Firm to clarify what was Home Building's basis to attack the state court foreclosure judgment in favor of Ms. Kadianakis. App. at A204. Counsel reiterated Home Building's belief that a $250,000 payment was not credited. App. at A204 – A205. The bankruptcy court asked, "So if the lender did credit it, do you have any argument?" App. at A205. Counsel stated that "the client has financing in place to pay off the entirety of the loan." App. at A205. The bankruptcy court observed that Home Building was always free to pay off the mortgage outside of the bankruptcy court. App. at A205.

This colloquy ensued:

> THE COURT: . . . I think you know the lender is going to tell me they credited [the $250,000 payment]. You know they're going to have a record that they credited it. And you know the argument that they didn't credit it has no basis in fact so -- but that's your argument. Have you seen any documentation from the lender showing they did credit it?
>
> [Counsel from the Weiss Firm]: I don't believe that I have, Your Honor.
>
> THE COURT: Show him.
>
> [Counsel for Ms. Kadianakis]: Yes, Your Honor. It was actually included in the proof of claim. It was, like, right there.
>
> THE COURT: Just show it to him.

[. . .]

[Counsel from the Weiss Firm]: It's right here, Your Honor.

THE COURT: They credit it. Court will grant the motion to dismiss.

App. at A205 – A206.

The bankruptcy court later described this moment:

> When Secured Creditor's counsel presented the proof of claim to Debtor's Counsel in the courtroom, Debtor's Counsel had no response and just shrugged his shoulders. It became clear to the Court that the Weiss Firm never even looked at documents showing the very argument the Debtor was attempting to make, which was the very foundation for this chapter 11 filing, was without merit.

App. at A221.

Counsel for the United States Trustee raised the issue of the retainer that Home Building paid to the Weiss Firm. The bankruptcy court directed the Weiss Firm to file an application for compensation. App. at A209. The subsequent written order required the Weiss Firm to file an application "complete with time records" within ten days. App. at A135.[3]

[3] Home Building noticed an appeal from this order, challenging the bankruptcy court's ruling on the motion to dismiss. *See Home Building Corp. v. Harrington (In re Home Building Corp.)*, No. 2:24-cv-07643-NCM (E.D.N.Y.) (the "First Appeal"). The United States Trustee has moved to dismiss the First Appeal under 28 U.S.C. § 158(a) on the grounds that the order is not final and does not meet the criteria for an interlocutory appeal. Merits briefing is stayed pending a decision.

### D. The bankruptcy court denies the Weiss Firm's application for attorneys' fees.

The Weiss Firm filed an application. It requested $24,979 in legal fees, to be paid from the $32,500 retainer the Weiss Firm received pre-petition. App. at A160. The application did not distinguish between attorneys' fees and expenses, but a review of the time sheets attached to the application indicate that the Weiss Firm sought $22,445 in attorneys' fees and $2,534 in expenses.[4]

The application asserted that the Weiss Firm had worked on filings, attended meetings and conferences, and "[c]ommunicated via letter, telephone and email on a frequent basis with the Debtor's creditors concerning their inquiries regarding the status and administration of the Debtor's case and business operations." App. at A163 – A164. The time sheets, however, do not indicate that the Weiss Firm ever communicated with counsel for Ms. Kadianakis or any other creditor. App. at A177 – A179. Nonetheless, the Weiss Firm asserted that its services "were necessary and beneficial to the Debtor' estate [sic]. The Applicant performed services necessary for the Debtor to administer this case." App. at A168.

The United States Trustee objected to the application. The Weiss Firm filed a response to the objection. In the response, the Weiss Firm ignored the

[4] The time sheets indicated the following expenses: $34 for a Pay.gov transaction, $100 for an asset search, $1,738 for the chapter 11 filing fee, $625 for a judgment/lien search, and $37 for an NAICS code search. App. at A178 – A179. The Weiss Firm later clarified it sought $2,400 in expenses. App. at A214.

concession of its attorney at the hearing on the United States Trustee's motion to dismiss and repeated the disproven refrain that Mr. Rogoza "obtained a mortgage in the amount of approximately $250,000.00 and tendered such funds to the mortgage holder" but "Debtor does not believe such funds have been accredited to the balance." App. at A213.

The bankruptcy court held a hearing on the application, at which the Weiss Firm admitted that it was holding the retainer paid by Home Building in its general operating account. App. at A283 – A286. After the hearing, the Weiss Firm transferred the retainer to its escrow account. App. at A216.

The bankruptcy court issued a written decision on the application. It described its repeated warnings to Home Building and the Weiss Firm that without an agreement with Ms. Kadianakis a confirmable plan was unlikely, the opportunities it gave Home Building to come to an agreement with Ms. Kadianakis, the lack of progress towards a plan, and Home Building's and the Weiss Firm's repeated false representations that money paid to Ms. Kadianakis had not been credited. App. at A218 – A222.

It found "that the Weiss Firm's services in this case were not reasonably likely to benefit the Debtor's estate and for that reason will deny any compensation for services rendered." App. at A224; *see* 11 U.S.C. § 330(a)(4)(A)(ii)(I). It observed that, over four months, the Weiss Firm's time sheets "contain no

evidence that the Weiss Firm took any steps" towards obtaining financing to pay off Ms. Kadianakis or selling the West Babylon property. App. at A224. "Four months into the case the Debtor produced no evidence that there was in fact a proposed third-party financer." App. at A224 – A225. And, over those four months, "its time sheets contain no mentions of conversations with counsel for the Secured Creditor, or the alleged third-party financer." App. at A224.

The bankruptcy court also was concerned that the Weiss Firm "was unable to respond to the Secured Creditor's proof of claim which showed that the allegedly uncredited $250,000 payment was in fact included in the Secured Creditor's calculation of its proof of claim," "which the Weiss Firm appears never to have reviewed." App. at A225.

It also rejected the Weiss Firm's assertion that it was entitled to fees because it "complied with and satisfied each and every procedural and statutory obligation." App. at A225. Doing "the bare minimum" is not sufficient in a chapter 11 case where the debtor is serving as a debtor in possession with the duties of a bankruptcy case trustee. App. at A225 – A226. "[A] benefit to the estate would require some possibility of a successful liquidation or reorganization - some benefit to creditors." App. at A228. Here, however, "[t]he Weiss Firm's assistance to the Debtor in complying with its duties under chapter 11 provided no benefit to the estate in terms of helping to formulate a reorganization or liquidation

plan to emerge from bankruptcy. The Weiss Firm failed to understand that its actions benefited only the Debtor and its principal, not the Debtor's estate." App. at A228.

The bankruptcy court subsequently issued an order denying the request for attorneys' fees, ordering the return of the pre-petition retainer, and awarding $2,400 in expenses. App. at A232 – A234. A timely notice of appeal was filed. App. at A235 – A260.

## SUMMARY OF THE ARGUMENT

**I.** The bankruptcy court denied the Weiss Firm's application for fees under 11 U.S.C. § 330(a)(4)(A)(ii)(I) as not reasonably likely to benefit Home Building's bankruptcy estate. That inquiry required the bankruptcy court to consider what a reasonable lawyer or law firm would do in similar circumstances. Under the circumstances of this case, a reasonable lawyer or law firm would have communicated with Ms. Kadianakis about Home Building's contention that its payments were not credited, which would have revealed the contention was unfounded far earlier in the bankruptcy case. A reasonable lawyer or law firm would have worked on securing financing or advancing a sale of the West Babylon property. And a reasonable lawyer or law firm would have prepared a chapter 11 plan in compliance with the bankruptcy court's deadline and its own commitments

to the court. The Weiss Firm did none of these things, so it was not an abuse of discretion for the bankruptcy court to deny the application.

The Weiss Firm's arguments to the bankruptcy court and on appeal are, essentially, that it performed ministerial tasks to advance the bankruptcy case. But merely advancing a case with no prospects of success does not benefit the bankruptcy estate. And its argument that the bankruptcy court needed to hold an evidentiary hearing are doomed by the Weiss Firm's failure to request one.

**II.** The Weiss Firm contends that, because Home Building appealed an order finding cause to dismiss its bankruptcy case, the bankruptcy court lacked jurisdiction to decide the Weiss Firm's fee application. This contention has two flaws. *First*, the order Home Building appealed is an interlocutory order and, under 28 U.S.C. § 158(a)(3), this Court has not assumed jurisdiction over it (and therefore removed jurisdiction from the bankruptcy court) because it has not granted leave to appeal. *Second*, if the bankruptcy court had lost jurisdiction over the appealed order, the Weiss Firm's fee application was not "involved in" that appeal. Courts routinely decide motions for attorneys' fees although the underlying judgment has been appealed. And the Weiss Firm cites no case where a bankruptcy court was found to be unable to decide a fee application in similar circumstances.

**III.** The Weiss Firm collaterally attacks the bankruptcy court's finding of cause under section 1112(b). The bankruptcy court's October 24, 2024, order is not the subject of this appeal.

In all events, that finding was not an abuse of discretion. There were two causes under 11 U.S.C. § 1112(b): failure to file a chapter 11 plan timely, and bad faith under Second Circuit precedent. The Weiss Firm does not acknowledge that Home Building failed to file a plan by the bankruptcy court's deadline or by the date to which the Weiss Firm's attorney committed in open court. Its claims of an imminent financing or sale are inconsistent with the facts. And each element the Second Circuit has found to evince a bad-faith bankruptcy case is met here. Home Building did not establish that there were unusual circumstances demonstrating that dismissal or conversion was not in the best interests of creditors and the estate and there was no likelihood of rehabilitation in a reasonable time. Home Building's remaining arguments fail.

The bankruptcy court's order denying the Weiss Firm's fee application should be affirmed.

## STANDARD OF REVIEW

A bankruptcy court's ruling on an application for attorneys' fees under 11 U.S.C. § 330(a) is reviewed for abuse of discretion. *See In re Poseidon Pools of Am.*, 216 B.R. at 100. "[T]he standard is demanding: to find such an abuse we

must be persuaded that the trial judge ruled in an arbitrary and irrational fashion." *Tereshchenko v. Karimi*, 102 F.4th 111, 124 (2d Cir. 2024). Put differently, the bankruptcy court "'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir. 2001) (footnote omitted).

## ARGUMENT

### I. The Bankruptcy Court Did Not Abuse Its Discretion In Denying The Weiss Firm's Application For Fees.

The Weiss Firm bore the burden of establishing its entitlement to be paid, which included showing that its services were reasonably likely to benefit the bankruptcy estate. *See In re Arebalo*, 2011 WL 1336676 at *2. The bankruptcy court found that the Weiss Firm's services were not reasonably likely to benefit the bankruptcy estate. App. at A224. That finding is well supported by the record, and, therefore, the bankruptcy court did not abuse its discretion in denying the Weiss Firm's application for compensation under 11 U.S.C. § 330(a)(4)(A)(ii)(I).

### A. The Weiss Firm failed to establish that its services were reasonably likely to benefit the estate.

As the bankruptcy court's careful recitation of the factual and procedural history demonstrates, the specific facts of each case govern whether a professional's services were reasonably likely to benefit the bankruptcy estate; that is, "what services [would] a reasonable lawyer or legal firm [] have performed in the same circumstances." *In re Ames Dep't Stores, Inc.*, 76 F.3d 66, 72 (2d Cir. 1996), *abrogated on other grounds by Lamie v. United States Trustee*, 540 U.S. 526 (2004).

Here, the facts of the case dictated what services would be reasonably likely to benefit the estate. Home Building owed more than $650,000 to a secured lender holding a final judgment of foreclosure from a state court. Its asset subject to foreclosure was worth more than the secured lender's claim, but Home Building thought it might be entitled to a credit for payments it made. Under these circumstances, a reasonable law firm serving as counsel to a fiduciary for creditors and others would take a few actions. *First*, the reasonable law firm would inquire of the secured lender whether Home Building's payments to the secured lender were credited. *Second*, the law firm would search for financing to pay off the debt to the secured lender, have Home Building's property listed for sale, or both. *Third*, the law firm would begin working on a chapter 11 plan to present to the court and Home Building's creditors.

This is because, given the foreclosure judgment and the excess equity in the property, Home Building could not realistically confirm a plan that did not pay the secured lender, Ms. Kadianakis, in full. *See generally supra* at 5-6 (discussing treatment of secured creditors in chapter 11 plans). And without cash on hand to pay her, Home Building could only raise the funds by a sale or by obtaining court approval to incur the debt associated with third-party financing. Moreover, Home Building needed to move with some speed due to the deadline to propose a plan set by the court and its counsel's commitment in open court to propose a plan by mid-October 2024.

But the Weiss Firm did *none* of this. According to its time records, it *never* contacted counsel for Ms. Kadianakis.[5] App. at A177 – A179. The bankruptcy

---

[5] The Weiss Firm claims that Home Building was paying Ms. Kadianakis during the pendency of the bankruptcy case. Appellant's Br. at 3 (citing "post-petition mortgage payments"), 17 (citing "adequate protection payments"). The record casts doubt on this claim. Typically, a debtor would seek the bankruptcy court's authorization to pay a pre-petition debt like Ms. Kadianakis's judgment because, otherwise, those payments could be avoided. *See* 11 U.S.C. § 549(a). But Home Building did not seek authorization. Home Building had no monthly mortgage payment; the note required all payments be made by April 1, 2017. App. at A105. Home Building's monthly operating reports said that it was not paying any pre-petition debt. App. at A051, A081, A143, A155 (answering "No" to "Were any payments made on prepetition debt"). And Home Building's counsel did not assert that payments made during the bankruptcy case were not being credited.

The only evidence on the other side is Home Building's principal's declaration: "Debtor has made, collectively three post-petition mortgage payments to the mortgage lender." App. at A088. He provided no additional details.

court was properly "disconcert[ed]" that the Weiss Firm never contacted her counsel about the crediting of payments, an issue central to Home Building's stated reorganization plan. App. at A225. Nor did the Weiss Firm appear to have reviewed Ms. Kadianakis's proof of claim. App. at A221. As a result, it repeatedly and falsely stated to the bankruptcy court that Home Building's payments to Ms. Kadianakis were not credited, wasting time and judicial resources on a reorganization theory that was factually wrong. *E.g.*, App. at A323.

Worse still, after Ms. Kadianakis's counsel told the Weiss Firm the claim was false and the Weiss Firm had her proof of claim demonstrating it was false—App. at A093, A325—the Weiss Firm continued to make the false claim to the bankruptcy court, App. at A087, A204 – A205. Further, despite its attorney conceding in open court that the payment was credited, the Weiss Firm nevertheless has persisted in making this false claim. *Compare* App. at A205 – A206 ("It's right here, Your Honor."), *with* App. at A213 (the Weiss Firm's subsequent fee application) ("Debtor does not believe that such funds have been accredited to the balance."); Appellant's Br. at 6 (stating that "the Debtor intends to dispute" Ms. Kadianakis's claim).

The Weiss Firm did not make any serious efforts to secure debt financing or to sell the West Babylon property to pay Ms. Kadianakis's claim. Again, the time sheets do not indicate the Weiss Firm attempted to list the West Babylon property

for sale beyond applying to employ a broker. Entries on September 11 and September 12, 2024, show a call with a broker and the drafting of an application to employ the broker, but no other time entries indicate any sale efforts. App. at A177. The only suggestion of debt financing in the time sheets is a single entry for one hour stating, "Review of pre-approval letter sent by client." App. at A177 (Oct. 15, 2024 entry). Even assuming this cryptic entry refers to Home Building's efforts to secure debt financing, this was already four months into the case and only a few days before the deadline the Weiss Firm committed to providing a chapter 11 plan. Regardless, the Weiss Firm appears to have been completely uninvolved before then and had no further involvement after it. App. at A225 ("By counsel's own admission, it was only the client, *i.e.*, the Debtor's principal, who allegedly made any efforts towards obtaining a refinance of the secured debt.").

Finally, the time sheets do not indicate the Weiss Firm made any effort to draft a chapter 11 plan. App. at A177 – A179. The bankruptcy court had ordered a plan be filed by October 8, 2024. App. at A001 – A002 (docket text for ECF No. 1). Moreover, the Weiss Firm promised the bankruptcy court that Home Building would file its plan before a mid-October 2024 hearing on the United States Trustee's motion to dismiss. App. at A196. Notwithstanding that court order and the firm's representation to the bankruptcy court, none of the Weiss Firm's time entries mention work on developing a plan.

Considered as a whole, the record shows that the Weiss Firm was performing the bare minimum actions necessary to keep Home Building's case alive without making any real efforts to pursue a reorganization. As the bankruptcy court recognized, keeping the case alive was reasonably likely to benefit the debtor, Home Building, but not the estate. App. at A228; *see Keate v. Miller (In re Kohl)*, 95 F.3d 713, 714 (8th Cir. 1996) ("[A]n attorney fee application in bankruptcy will be denied to the extent the services rendered were for the benefit of the debtor and did not benefit the estate."). But "[t]he filing of a bankruptcy petition merely to prevent foreclosure, without the ability or the intention to reorganize, is an abuse of the Bankruptcy Code." *Casse v. Key Bank N.A. (In re Casse)*, 198 F.3d 327, 332 (2d Cir. 1999); *see also In re Pugh*, No. 18-cv-06508-JMA, 2020 WL 2836823, at *6 (E.D.N.Y. May 31, 2020) (affirming denial of the Weiss Firm's application for fees in a chapter 13 case) ("The Second Bankruptcy Case was filed in order to obtain a stay and to utilize the Court's loss mitigation program. Judge Grossman did not clearly err or abuse his discretion in concluding that this was not an appropriate basis to file the Second Bankruptcy Case and charge Debtor $3,500 when there was little, if any, reason to believe that a second attempt at loss mitigation would be successful.") (citation omitted).

A genuine effort to complete Home Building's reorganization would have included discussions with the secured creditor, work on third-party financing or a

sale, and the preparation of a chapter 11 plan. Without any of those efforts, the Weiss Firm's services were not reasonably likely to advance Home Building's fiduciary obligations to its creditors as a debtor in possession. *See*, *e.g.*, *In re Kohl*, 95 F.3d at 714 ("While it is not necessary to have a successful reorganization in order for debtor's counsel to be awarded fees, fees may be denied when counsel should have realized that reorganization was not feasible and therefore services in that effort did not benefit the estate.").

**B. The Weiss Firm's characterization of its work is inconsistent with the facts and law.**

The Weiss Firm insists that its work in maintaining the case with the accompanying automatic stay was reasonably likely to benefit the estate because it "preserve[d] the equity in the estate," which the Weiss Firm characterizes as "vast" and "significant." Appellant's Br. at 35-37. It is unclear what this means. When a secured lender has a judgment of foreclosure, a bankruptcy filing "preserves" the equity in the property only if the bankruptcy case will sell the property for more than the foreclosure sale would recover or the debtor can otherwise pay off the foreclosure judgment. The Weiss Firm made no steps towards either goal. It suggests that the bankruptcy court "impliedly acknowledged" the benefit to the estate, Appellant's Br. at 9-10, but it does not cite any such language in the

bankruptcy court's decision.[6] The suggestion is inconsistent with the plain language of the decision: "the filing of this bankruptcy case benefited the Debtor in that it obtained a stay of state court proceedings that it could not otherwise have obtained in state court. However, a benefit to the estate would require some possibility of a successful liquidation or reorganization - some benefit to creditors." App. at A228.

The Weiss Firm further contends that the bankruptcy court "acknowledged that the Weiss Firm performed services which warrant some level of compensation" because it did not question that the Weiss Firm performed some duties. Appellant's Br. at 33. But section 330(a)(4) prohibits a bankruptcy court from awarding compensation for work actually performed if it was not reasonably likely to benefit the estate. That is precisely what the bankruptcy court concluded here. App. at A224.

And the Weiss Firm renews its argument that the administrative tasks it performed are compensable. *E.g.*, Appellant's Br. at 9. It asserts that under *In re Ames Department Stores* and other cases, counsel can be compensated for

---

[6] It also inexplicably claims that the United States Trustee did not take "the position that the case was unnecessary and of no benefit" and the bankruptcy court "took an extreme and untenable position that no other party in interest took." Appellant's Br. at 23. To the contrary, the United States Trustee moved to dismiss the case as a bad-faith filing and for an inability to reorganize, App. at A064 – A072, and he objected to the Weiss Firm's fees as lacking a benefit to the estate and not directed towards reorganization, App. at A222 – A223.

administrative work even if reorganization is unsuccessful. Appellant's Br. at 25-32. The United States Trustee agrees that reorganization is not a condition precedent to a chapter 11 debtor in possession's attorney being compensated. But *In re Ames Department Stores* did not say that any services an attorney performed are compensable, nor did *Barron & Newburger, P.C. v. Texas Skyline, Ltd. (In re Woerner)*, 783 F.3d 266 (5th Cir. 2015) (en banc), nor *In re Lupton Consulting LLC*, 638 B.R. 897 (Bankr. E.D. Wis. 2022).

Rather, the bankruptcy court must consider "what services a reasonable lawyer or legal firm would have performed in the same circumstances." *In re Ames Dep't Stores, Inc.*, 76 F.3d at 72; *see also In re Woerner*, 783 F.3d at 276 (same); *In re Lupton Consulting LLC*, 638 B.R. at 906 ("A determination of whether services were reasonably likely to benefit a debtor's estate must be based on the circumstances at the time the services were performed."). Here, the question is whether a reasonable lawyer or law firm, when representing a chapter 11 debtor in possession with fiduciary duties to its creditors, would have (a) contacted the secured judgment creditor before asserting that creditor did not credit payments made, (b) read the secured judgment creditor's filed proof of claim, (c) made efforts sell the property or secure third-party financing to pay off the secured judgment creditor, and (d) drafted a chapter 11 plan. The United States Trustee submits that the answer is yes.

### C. The Weiss Firm never requested an evidentiary hearing on its application.

The Weiss Firm asserts that the bankruptcy court did not provide "adequate notice or [an] evidentiary hearing[]" on its fee application. Appellant's Br. at 10; *see also*, *e.g.*, *id.* at 11 (similar), 23 ("assumes fair notice and a fair hearing, something which did not take place in our case"). The Weiss Firm received fair notice of its own fee application. It received fair notice of the United States Trustee's objection. App. at A212 – A215 (responding to the objection); App. at A222 n.3. And the bankruptcy court held a hearing on the fee application. App. at A278 – A307.

The Weiss Firm's suggestion that it was entitled to an evidentiary hearing is belied by the fact that, as the applicant, it could have requested an evidentiary hearing but did not do so. The bankruptcy court's Local Rule 9014-2 provides, "The first scheduled hearing in a contested matter"—like the Weiss Firm's contested application—"will not be an evidentiary hearing at which witness may testify" except in circumstances not applicable here. "Where an evidentiary hearing is not required and the appealing party fails to request an evidentiary hearing, the appealing party cannot be heard to complain about the lack of an evidentiary hearing." *Rora LLC v. 404 E. 79th St, Lender LLC*, 630 B.R. 876, 889 (E.D.N.Y. 2021) (citing cases). Here, an evidentiary hearing was not required because "the record permitted the Bankruptcy Court to draw the necessary

inferences." *Id.* (cleaned up). The record before the bankruptcy court included the case history and filings and the Weiss Firm's submitted time records. So, if the Weiss Firm wanted to call a witness or submit more evidence, it needed to inform the bankruptcy court.

Yet at no point did the Weiss Firm request an evidentiary hearing. Its application stated, "Based on the above, as well as the detailed Time Records, the Applicant respectfully submits that it has adequately explained" its entitlement to an award and did not request an evidentiary hearing. App. at A168. Its response to the United States Trustee's objection never requested an evidentiary hearing. And at the hearing on its fee application, the Weiss Firm never asked to present additional evidence. Accordingly, it cannot complain on appeal.

## II. The First Appeal Did Not Prevent The Bankruptcy Court From Ruling On The Weiss Firm's Application For Compensation.

Relying on *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) (per curiam), and *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), the Weiss Firm argues that the bankruptcy court lacked jurisdiction to deny its application for compensation because Home Building appealed the bankruptcy court's order finding that cause existed under 11 U.S.C. § 1112(b). *See supra* at 16 n.3; Appellant's Br. at 12-22.

In *Griggs*, the Supreme Court observed, "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of

appeals and divests the district court of its control over those aspects of the case involved in the appeal." 459 U.S. at 58. The Second Circuit has explained that the *Griggs* rule "divests the [lower court] of jurisdiction respecting the questions raised and decided in the order that is on appeal." *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989). Thus, "when the judgment appealed from does not determine the entire action," the lower court "may proceed with those matters not involved in the appeal." *Id.*

In *Coinbase*, the Supreme Court applied the *Griggs* rule to conclude that a statutorily authorized interlocutory appeal from an order denying a motion to compel arbitration divested the district court of jurisdiction over the entire action because where "the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.'" 599 U.S. at 741.

The *Griggs* rule did not prevent the bankruptcy court from deciding the Weiss Firm's fee application for two reasons. *First*, the First Appeal is an interlocutory appeal and, under 28 U.S.C. § 158(a)(3), an appellate court does not take jurisdiction over an interlocutory appeal until it accepts the appeal. *Second*, the Weiss Firm's fee application was not a matter or question raised or decided in the order at issue in the First Appeal.

### A. This Court has not accepted jurisdiction over the First Appeal.

28 U.S.C. § 158(a) defines this Court's appellate jurisdiction. It grants this Court jurisdiction to hear appeals from "final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). This Court *may* hear an appeal from an interlocutory order, but it must grant leave to do so. 28 U.S.C. § 158(a)(3). When a litigant appeals an interlocutory order, "any appeal would be premature and would not transfer jurisdiction to an appellate court" until it accepts the interlocutory appeal. *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 903-04 (9th Cir. 2005). This is because courts "see no efficiency to be gained by allowing a party arbitrarily to halt the [lower] court proceedings by filing a plainly unauthorized notice which confers on this Court the power to do nothing but dismiss the appeal." *Leonhard v. United States*, 633 F.2d 599, 610 (2d Cir. 1980). Thus, "[f]inal appeals divest jurisdiction, authorized interlocutory appeals limit jurisdiction, and unauthorized interlocutory appeals leave jurisdiction unaffected." *Keene Corp. v. Coleman (In re Keene Corp.)*, 166 B.R. 31, 33 (Bankr. S.D.N.Y. 1994).[7]

---

[7] *See also Huezo v. Ball (In re Huezo)*, No. CC-19-1260-LTaF, 2020 WL 4199950, at *6 (B.A.P. 9th Cir. July 22, 2020) (mem.) ("[J]urisdiction did not transfer to the Panel because the September 2016 Memorandum was not a final order. This Panel lacks jurisdiction over interlocutory orders unless it grants leave to appeal."); *cf.* Fed. R. Bankr. P. 8009(a)(1)(B) ("The appellant must file and serve the designation and statement within 14 days after: (i) the appellant's notice of appeal as of right becomes effective under Rule 8002; or (ii) an order granting leave to appeal is entered.").

*(continued)*

The United States Trustee has moved to dismiss the First Appeal because it is an interlocutory appeal as to which this Court should deny leave to appeal. The order at issue in the First Appeal is not final—*i.e.*, it is interlocutory—because, although the bankruptcy court found cause under section 1112(b), it did not finally order dismissal.[8] *See* 11 U.S.C. § 1112(b)(1) (requiring a bankruptcy court to choose a remedy if it finds cause). Without finally deciding the remedy, the bankruptcy court did not "preclusively resolve[] a substantive issue" nor "conclusively resolve[] the movant's entitlement to the requested relief." *Ritzen Grp. Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 46 (2020). The bankruptcy court's order is, therefore, like an order finding liability without assessing damages; such an order is not final. *See*, *e.g.*, *Taylor v. Board of Educ. of City Sch. Dist. of New Rochelle*, 288 F.2d 600, 602 (2d Cir. 1961) ("An order adjudging liability but leaving the quantum of relief still to be determined has been a classic

---

Some cases in this Circuit indicate an interlocutory appeal deprives a lower court of jurisdiction unless the appeal is frivolous, but these cases involve interlocutory appeals that are authorized by statute or by the collateral order doctrine. *See*, *e.g.*, *Retirement Bd. of Policemen's Annuity & Benefit Fund. v. Bank of N.Y. Mellon*, 297 F.R.D. 218, 219-20 (S.D.N.Y. 2013) (interlocutory appeal authorized under 28 U.S.C. § 1292(b)). The statute permitting an interlocutory appeal in these circumstances expressly incorporates action by this Court to assume jurisdiction.

[8] The Weiss Firm criticizes the United States Trustee's compliance with the bankruptcy court's order. Appellant's Br. at 5, 8-9. Its disagreement with the United States Trustee's interpretation of his obligations under the order does not affect whether the order is final. It may raise its disagreement with the bankruptcy court.

example of non-finality and non-appealability from the time of Chief Justice Marshall to our own."). Indeed, the Weiss Firm appears to concede the order is not final: "[T]he Motion to Dismiss was never decided in a final manner." Appellant's Br. at 18. And because it is not final, it is not appealable without leave of court. 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8004.

Therefore, at the time the bankruptcy court decided the Weiss Firm's fee application, the *Griggs* rule did not apply.

### B. The Weiss Firm's fee application was not a matter involved in the First Appeal.

Even if the *Griggs* rule applied when the bankruptcy court decided the Weiss Firm's fee application, deciding the fee application did not run afoul of the *Griggs* rule.

"A bankruptcy case encompasses numerous individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor." *Ritzen Grp.*, 589 U.S. at 38. The United States Trustee's motion to dismiss under section 1112(b) and the Weiss Firm's fee application were separate "contested matters" under the Bankruptcy Rules. *See* Fed. R. Bankr. P. 1017(f)(1), 9014; *In re Hood Farms, Inc.*, 639 B.R. 788, 790 (Bankr. M.D. Ga. 2022) ("Applications for compensation are contested matters.").

The two contested matters asked different legal questions: The bankruptcy court's order at issue in the First Appeal addressed whether the debtor could

continue to pursue relief under chapter 11. Its order denying the Weiss Firm's fee application determined whether the firm's services were reasonably likely to benefit the estate under 11 U.S.C. § 330(a)(4).

The Second Circuit has held, "[N]otwithstanding a pending appeal, a district court retains residual jurisdiction over collateral matters, including claims for attorneys' fees." *Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004); *see also Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998). Like a district court, a bankruptcy court also can rule on a request for attorneys' fees despite an appeal, and the Weiss Firm cites no precedent prohibiting a bankruptcy court from ruling on a request for attorneys' fees when an appeal has been filed of an order in another contested matter.

The Weiss Firm repeatedly uses the term "bad faith" in quotation marks, implying that the bankruptcy court merely applied its prior order on cause under section 1112(b) to deny the fee application. *E.g.*, Appellant's Br. at 12 ("In essence, the Bankruptcy Court . . . alluded to the Chapter 11 case being a 'bad faith' filing . . . ."). This argument cannot be squared with *Tancredi*: The *Griggs* rule prohibits a lower court from modifying an order on appeal or otherwise defeating an appellate court's jurisdiction; it does not prevent a lower court from relying on or citing an earlier decision when addressing "collateral matters."

But this argument fails even on its own terms. The bankruptcy court's decision on the fee application never uses the terms "bad faith" or "good faith" or cites section 1112(b) at all. *See generally* App. at A217 – A231. Instead, the bankruptcy court applied the legal standard of 11 U.S.C. § 330(a)(4). App. at A223 – A224. Moreover, it relied on additional evidence not available when it issued the order underlying the First Appeal: the Weiss Firm's time records.

This case also is not like *Coinbase* as the Weiss Firm claims. Appellant's Br. at 14-15. In *Coinbase*, because the appeal in question would determine if a trial should happen in federal court, the district court could not proceed towards a trial while the appeal was pending. 599 U.S. at 741. Here, the First Appeal will not address or decide whether the Weiss Firm is entitled to compensation.

Accordingly, the *Griggs* rule did not apply when the bankruptcy court decided the Weiss Firm's fee application, and if it did apply, the bankruptcy court did not violate it.

## III. To The Extent This Court Finds The Issue Relevant, The Bankruptcy Court's Finding Of Cause Under Section 1112(b) Was Not An Abuse Of Discretion.

Much of the Weiss Firm's brief collaterally attacks the order at issue in the First Appeal. Appellant's Br. at 2-4, 6-8, 10, 11, 15-22, 31, 34-35, 36-37. This appeal does not arise from that order, and the Court should reject the Weiss Firm's backdoor attempt to challenge that order here. It can be addressed in the First

Appeal, if this Court denies the United States Trustee's motion to dismiss, or in an appeal from a final, appealable order.

In all events, that order finding cause was not an abuse of discretion.

Congress has provided that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment . . . of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

Cause is not defined in the Code. But courts universally accept that lack of good faith in filing a bankruptcy petition is cause. *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309-12. Additionally, cause includes "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by [the Bankruptcy Code] or by order of the court." 11 U.S.C. § 1112(b)(4)(J).

When a movant has established cause, the burden shifts to the party objecting to conversion or dismissal. The bankruptcy court may not dismiss or convert "if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). The objecting party must also establish that "there is a reasonable likelihood that a plan will be confirmed within"

a reasonable time and that the debtor's acts or omissions are reasonably justified and will be cured within a reasonable time. *Id.*

A bankruptcy court's ruling under section 1112(b) is reviewed for abuse of discretion. *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312. Here, there were two separate causes of dismissal, either of which would have been sufficient by itself to dismiss the case. *See Hoover v. Harrington (In re Hoover)*, 828 F.3d 5, 9 (1st Cir. 2016) ("one cause is enough").

### A. Cause existed under section 1112(b)(4)(J) because Home Building failed to file a plan and had shown no sign of reorganizing.

The bankruptcy court set a deadline of October 8, 2024, for Home Building to propose a plan. App. at A001 – A002 (docket text for ECF No. 1). This deadline corresponded to the Bankruptcy Code's granting of a 120-day exclusive period for the debtor to propose a plan. *See* 11 U.S.C. § 1121(b). Home Building did not file a plan by this deadline.

At a September 16 hearing, counsel from the Weiss Firm committed to filing a plan before the next-scheduled hearing on October 21. App. at A196. Home Building did not file a plan before the October 21 hearing as promised.

Under these circumstances, cause existed under section 1112(b)(4)(J), because it "fail[ed] . . . to file . . . a plan, within the time fixed by [title 11] or by order of the court." 11 U.S.C. § 1112(b)(4)(J); *see also* App. at A068 – A071 (moving to dismiss on this ground).

The Weiss Firm's brief omits these facts. In the Weiss Firm's telling, reorganization was just around the corner: "[T]he Debtor's vast equity in the property allowed a 100% payout plan, upon refinancing or a sale of the property." Appellant's Br. at 6. "The Debtor-Appellant was moving forward to sell and/or refinance the Property." *Id.* at 7. "[O]ur case was still at an early stage and realistically a completely implemented reorganization in Chapter 11 within 4-5 months is unrealistic in most cases." *Id.* at 21.

These assertions are contrary to the record. Besides moving to retain a broker, Home Building made no other efforts towards a sale. At the September 16 hearing, Home Building said that a sale was only a backup plan if it could not obtain third-party financing to pay off Ms. Kadianakis. App. at A191 – A192. The claim that third-party financing was imminent is belied by the fact that Home Building and the bankruptcy court had discussed third-party financing since the first hearing in July 2024, and yet no motion to authorize incurring debt had been filed. App. at A267, A270; *see* 11 U.S.C. § 364(d).

The sole evidence before the bankruptcy court regarding third-party financing was a cryptic comment from Home Building's principal that it "has obtained third party financing but is uncertain the amount necessary to cure the entire debt." App. at A087. This assertion is not backed up by any documentary

evidence and would be inconsistent with Home Building's obligation to seek court approval for any such debt under section 364(d).[9]

The Weiss Firm's suggestion that Home Building should not have been expected to propose a plan on the schedule the Bankruptcy Code establishes or by the date its counsel committed to should be rejected. The October 8 deadline was the statutory default for a debtor to propose a plan, 11 U.S.C. § 1121(b), and Home Building never requested an extension of time to propose a plan. Yet, to hear Home Building tell it now, proposing a plan would have been easy given the purported ready availability of financing, the equity in the West Babylon property, and its purported willingness to sell.

Regardless of what Home Building says now, the fact is that it did not file a plan by the deadline set by the bankruptcy court or to which its counsel committed.

**B. Cause existed due to bad faith under Second Circuit precedent.**

The requirement that a bankruptcy petition be filed in good faith "furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1310. It allows "financially distressed business

[9] The Weiss Firm's time entries suggest that, at best, Home Building had received a "pre-approval letter" for financing in October 2024. App. at A177. The important details—the lender, the amount, the interest rate, etc.—remain unknown.

enterprises" "breathing space in which to return to a viable state," while preventing businesses with "no hope of reorganization" from unfairly delaying creditors. *Id.*; *see also* App. at A071 – A072 (moving to dismiss on this ground).

In *In re C-TC 9th Avenue Partnership*, the Second Circuit identified eight factors to evaluate whether a petition was filed in bad faith based on the pre-petition circumstances of the debtor. 113 F.3d at 1311. The uncontested evidence demonstrates that each of those factors points to bad faith here.

***One asset.*** Besides a small bank account and a small security deposit, Home Building's only valued asset was the West Babylon property. App. at A021 – A025.

***Few unsecured creditors with small claims.*** Home Building had only three unsecured creditors with claims totaling $4,500. App. at A056.

***Foreclosure.*** Home Building's "one asset [wa]s the subject of a foreclosure action as a result of arrearages or default on the debt." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311; App. at A094 – A104.

***Essentially a two-party dispute.*** Home Building's "financial condition is, in essence, a two party dispute between [Home Building] and secured creditors which can be resolve in the pending state foreclosure action." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311. The Weiss Firm's brief disputes this point. *E.g.*, Appellant's Br. at 6 ("The Case Was Not a 'Two-Party Dispute'"). Its evidence

for this, however, is three late-added unsecured creditors with total claims of $4,500. *Id.* But the Second Circuit said the dispute must be "in essence" a two-party dispute. *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311. The existence of three unsecured creditors whose claims in total constituted less than 1% of Home Building's debt[10] does not change the *essential* character of Home Building's financial situation. Home Building's monthly revenue of $10,000 was sufficient to pay these unsecured claims. *Compare* App. at A056, *with* App. at A030; *see also* App. at A324 ("He could file a plan today for 100 percent, pay them 5,000, and that's the end of the case. . . . $5,000 of unsecured debt[ ] isn't worth the cost of filing a plan and disclosure statement."). Home Building was in bankruptcy because of its dispute with Ms. Kadianakis. App. at A265 ("THE COURT: What are we doing here? [Counsel from the Weiss Firm]: The bank's claiming that they owe $800,000.00.").

***Intent to delay Ms. Kadianakis's legitimate efforts to enforce her rights.*** Home Building admitted that it filed for bankruptcy to stay Ms. Kadianakis's judgment while it tried to recalculate her judgment. App. at A267 ("I want you to let me run this case and we're going to contemporaneously attack the judgment of foreclosure."); App. at A293 ("We needed to stay the sale and we needed to sell

---

[10] The unsecured creditors in total had $4,500 in claims. App. at A056. Ms. Kadianakis's proof of claim was for $625,952. App. at A091. Thus, the unsecured claims were 0.71% of the total debt.

the property, and we needed the time to do it. . . . If we didn't go into bankruptcy, it would have been sold."). This purpose is confirmed by the Weiss Firm's and Home Building's focus on getting Ms. Kadianakis's judgment altered. *E.g.*, App. at A193 – A194 (describing their plan to move in state court to recalculate the judgment). On appeal, the Weiss Firm now argues that the stay was not intended solely to delay Ms. Kadianakis's legitimate interests but to allow Home Building to "mov[e] forward to sell and/or refinance the Property." Appellant's Br. at 7. But as described above—*supra* I.A, III.A—this contention is inconsistent with the Weiss Firm's and Home Building's lackadaisical approach to the bankruptcy case.

***Single revenue stream.*** Home Building's only revenue was $10,000 per month in rent on the West Babylon property. App. at A028, A030.

***Home Building was losing money.*** As of the October 21 hearing, the two filed monthly operating reports showed Home Building's expenses exceeded its profit. App. at A045, A075.

***Home Building had no full-time employees.*** The monthly operating reports said that Home Building had no full-time employees. App. at A044, A074.

"The presence of [these] factors was adequate evidence of the debtor's impermissible purpose in filing." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311. The Weiss Firm contends that the bankruptcy court "acknowledged that the facts support that there was a reasonable likelihood at the time of filing that the debtor

had the intent to reorganize" because the court stated, "the debtor indicated that it intended to obtain financing . . . or alternative to sell." Appellant's Br. at 20 (quoting App. at A224). The Weiss Firm overstates the bankruptcy court's acknowledgment. *E.g.*, App. at A224 n.4 (pointing out instances of unnecessary delay). But regardless, a purported subjective intent to reorganize is not a factor under *In re C-TC 9th Avenue Partnership*, which objectively looks to pre-petition circumstances to determine whether the case is a permissible use of bankruptcy.

**C. Home Building did not establish that section 1112(b)(2) applied.**

11 U.S.C. § 1112(b)(2) provides a limited exception to dismissal or conversion where unusual circumstances demonstrate that they are not in the best interest of creditors and the estate and, among other things, reorganization will happen in a reasonably short time. Home Building did not establish these elements.

Dismissal is—and likely will be—in the best interests of creditors and the estate. Converting the case to chapter 7 or appointing a chapter 11 trustee or examiner—the other options when cause exists under section 1112(b)(1)—would merely result in more administrative expenses, commissions, or professional fees that would diminish the recovery available to creditors and, in this case, Home Building itself. *See In re MF Global Holdings Ltd.*, 465 B.R. 736, 742 (Bankr. S.D.N.Y. 2012) ("[C]onversion would only increase the administrative expenses to

the estate and decrease available recoveries for all creditors.”). Instead, dismissing the case would allow the resolution of Ms. Kadianakis’s claim—whether through a sale of the West Babylon property or paying her judgment—without requiring federal court supervision and its attendant costs.

Another factor further undermining any showing of unusual circumstances was Home Building’s and the Weiss Firm’s failure to recognize that the key premise underlying the bankruptcy case—that its post-judgment payments to Ms. Kadianakis were not credited—was false. Home Building and the Weiss Firm could have avoided substantial effort had they inquired of Ms. Kadianakis’s counsel whether the payments were credited. But they never asked, and they did not review the proof of claim when it was filed.

The failure to make even a basic inquiry into the key contention in the bankruptcy case also undermines any suggestion that Home Building would reorganize in a reasonable time. Home Building’s stated plan was to attack Ms. Kadianakis’s judgment and then begin trying to reorganize. *E.g.*, App. at A087 – A088, A193 – A194, A322 – A326. Once its plan to attack Ms. Kadianakis’s judgment was shown to be baseless, it would have to be ready to sell or refinance to reorganize in a reasonably short time. But, as noted above, Home Building’s conduct to that point in the bankruptcy case did not demonstrate that a sale or financing was, in fact, imminent. *See supra* I.A, III.A.

**D. The remaining arguments fail.**

The Weiss Firm asserts that the bankruptcy court entered its order without notice and a hearing. *E.g.*, Appellant's Br. at 7. This is incorrect. Home Building received notice of the United States Trustee's motion, an opportunity to file an objection to that motion, and attended and argued at the hearing. That was sufficient. *See* 11 U.S.C. § 102(1) (notice and a hearing mean notice and a hearing "as [are] appropriate in the particular circumstances").

The Weiss Firm argues that the bankruptcy court needed to hold an evidentiary hearing. *E.g.*, Appellant's Br. at 8. But, as explained above—*supra* I.C—the bankruptcy court was not required to hold an evidentiary hearing unless Home Building requested one. Home Building had the opportunity to and did submit evidence in opposition to the United States Trustee's motion. App. at A086 – A089 (affidavit of principal). Ultimately, there was not a dispute about what the facts were; the parties disputed what inferences to draw from those facts.

The Weiss Firm makes a specific claim about lack of notice: It says Home Building "believed it addressed the concerns of the U.S. Trustee in amending its schedules to add creditors and in submitting an appraisal to the Court which showed a vast amount of equity." Appellant's Br. at 17. This argument confuses what happened below. Home Building amended its schedules to list unsecured creditors in response to the *bankruptcy court's* concern that no creditors existed

who could vote to confirm any plan Home Building would propose, a necessary part of plan confirmation. App. at A270 (July transcript) ("And you can't confirm a plan because there's no classes to vote in favor."), A056 – A057 (amended schedule), A323 (August transcript) ("Well, now we have unsecured Creditors, Your Honor, who have their voting rights."). The United States Trustee moved to dismiss later in August, asserting cause under section 1112(b)(4)(J) and bad faith. App. at A060 – A073. And submitting an appraisal would only address cause under section 1112(b)(4)(J) *if* Home Building did anything to move towards a sale, which it did not do.

Finally, the Weiss Firm complains that the bankruptcy court did not hold a hearing on the United States Trustee's motion to dismiss fast enough. Appellant's Br. at 18. It argues that the section 1112(b)(3) required the bankruptcy court to hold a hearing on the motion to dismiss within 30 days of its August 29 filing date, or by September 30 (the next Monday after Saturday, September 28). But section 1112(b)(3) allows the movant—in this case, the United States Trustee—to consent to an extension, which the United States Trustee did by adjourning a scheduled September 30 hearing to October 21. App. at A004 (ECF No. 24).

## CONCLUSION

The United States Trustee respectfully asks this Court to affirm the bankruptcy court's order denying the Weiss Firm's application for attorneys' fees.

Respectfully submitted,

WILLIAM K. HARRINGTON
United States Trustee for Region 2

April 2, 2025

By: /s/ *Frederick G. Hall*
FREDERICK GASTON HALL
Trial Attorney

RAMONA D. ELLIOTT
Deputy Director/General Counsel
P. MATTHEW SUTKO
Associate General Counsel
FREDERICK GASTON HALL
Trial Attorney

Department of Justice
Executive Office for
United States Trustees
441 G Street, NW, Suite 6150
Washington, DC 20530
Tel.: (202) 307-1399
frederick.g.hall@usdoj.gov

WILLIAM K. HARRINGTON
United States Trustee for Region 2
CHRISTINE G. BLACK
Assistant United States Trustee
ANDREW D. VELEZ-RIVERA
Trial Attorney

Department of Justice
Office of the United States Trustee
Alphonse D'Amato
Federal Courthouse
560 Federal Plaza, Roome 560
Central Islip, NY 11722
Tel.: (631) 715-7800
andy.velez-rivera@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Bankruptcy Procedure 8015(g), this document contains 12,182 words.

This document complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ *Frederick G. Hall*
FREDERICK GASTON HALL
Trial Attorney